Michael A. Strauss (State Bar No. 246718)
mike@strausslawyers.com
Andrew C. Ellison (State Bar No. 283884)
andrew@strausslawyers.com
Aris E. Karakalos (State Bar No. 240802)
aris@strausslawyers.com
STRAUSS AND STRAUSS, APC
121 N. Fir St., Suite F
Ventura, CA 93001
Telephone: (805) 641.9992
Facsimile: (805) 641.9993

*Attorneys for Plaintiff And others similarly situated*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KYLE JENSEN, an individual; CHRISTOPHER BEATTY, an individual; for themselves and those similarly situated,

Plaintiff,

vs.

SECORP INDUSTRIES, a Louisiana partnership; and DOES 1 through 100, inclusive,

Defendants.

Case No2:19-cv-07980-MWF-(SKx)
(FLSA Claims)

2:18-cv-02890-RGK-GJS
(Rule 23 claims)
(Concurrently resolved)

PUTATIVE CLASS ACTION

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF STIPULATION OF CLASS AND COLLECTIVE ACTION SETTLEMENT, PAGA SETTLEMENT AND RELEASE**

**Date:** **December 7, 2020**
**Time:** **9:00 a.m.**
**Place:** **Courtroom 850, 8th Floor**
**255 East Temple Street**
**Los Angeles, CA 90012**

1

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND APPROVAL OF A COLLECTIVE ACTION SETTLEMENT UNDER THE FLSA

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that the parties have met conferred pursuant to Local Rule 7-3, for months prior to filing this motion and counsel for Defendant has indicated he will not oppose the motion.   On December 7, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Gary Klausner, at the United States District Court for the Central District of California, Roybal Federal Building and U.S. Courthouse located 255 East Temple Street, Los Angeles, CA 90012   Courtroom 850, 8th Floor, Plaintiffs Kyle Jensen and Christopher Beatty ("Plaintiff" or "Plaintiffs") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order: Granting preliminary approval of the proposed settlement upon the terms and conditions set forth in the Joint Stipulation of Class and Collective Action Settlement, PAGA Settlement and Release of *Kyle Jensen v. Secorp Industries.* (hereinafter referred to as the "Settlement Agreement");

1. Certifying the following two classes for settlement purposes only:

   a. "California Class" defined as all current and former hourly employees of Defendant, who worked multiday hitch for Defendant on oil platforms on the outer continental shelf off the California coast for shifts of 12 hours or more from February 9, 2014 through the date of preliminary approval ("California Class Period"); and

   b. "FLSA Class" defined as all current and former hourly employees of Defendant, who worked a multi-day hitch for Defendant on an oil platform on the outer continental shelf off any coast of the United States between September 13, 2016 and the date of preliminary approval, who consent to become party plaintiffs to the Fair Labor Standards Act collective action by submitting a form so indicating.

2. Approving the settlement of the collective claims under the Fair Labor Standards Act and class claims under California law;

3. Approving the proposed manner of mailing, size, and content of the California Notice Packet, including the California Class Form, California Class Notice, and Exclusion Letter; and the FLSA Notice Packet, including the FLSA Collective Form, FLSA Collective Action Notice, and FLSA Opt In Form, which are all attached as Exhibits 1 to 6 of the Settlement Agreement;
4. Appointing Phoenix Settlement Administrators as the Settlement Administrator;
5. Appointing the law firm of Strauss & Strauss, APC as Class Counsel;
6. Appointing Plaintiffs Kyle Jensen and Christopher Beatty as Class Representative ("Class Representative");
7. Setting a final fairness hearing to consider the fairness, reasonableness and adequacy of the proposed settlement as well as the award of attorney's fees and costs to Class Counsel and Service Award to the Class Representative; and
8. Granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities; the Declarations of Michael A. Strauss, Andrew C. Ellison, and Class Representatives and Beatty , filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence that may be presented at the hearing in this matter.

This Motion and all accompanying pleadings have been reviewed and is unopposed by Defendant Secorp Industries.

Dated: November 4, 2020

**STRAUSS AND STRAUSS, APC**

By: *_/s/ Andrew C. Ellison_*

Andrew C. Ellison
*Attorneys for Plaintiff and the Putative Class*

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ........ 2

III. RISKS INHERENT IN FILING THIS CASE ........ 4

IV. SUMMARY OF THE PROPOSED SETTLEMENT ........ 5

A. SETTLEMENT CLASS MEMBERS AND CLASS PERIOD ........ 5

B. GROSS SETTLEMENT VALUE AND NET SETTLEMENT VALUE ........ 6

C. CLASS COUNSEL FEES AND COSTS ........ 7

D. SERVICE AWARDS TO NAMED PLAINTIFFS ........ 7

E. SETTLEMENT SHARES ........ 7

F. SELECTION OF PHOENIX SETTLEMENT ADMINISTRATORS AS SETTLEMENT ADMINISTRATOR ........ 8

G. OPT-OUTS AND OBJECTIONS TO SETTLEMENT ........ 8

H. SCOPE OF RELEASE FOR SETTLEMENT CLASS AND PLAINTIFF ........ 9

I. CLASS NOTICE ........ **ERROR! BOOKMARK NOT DEFINED.**

J. FAIR, ADEQUATE AND REASONABLE SETTLEMENT ........ 10

V. LEGAL ARGUMENT ........ 11

A. PLAINTIFF'S LEGAL THEORIES ........ 11

1. Labor Code 226 Claim ........ 12

2. Rest Period Claim ........ 13

3. Meal Period Claim ........ 14

4. Unfair Competition Claim ........ 15

5. Waiting-Time Penalty Claim ........ 15

6. FLSA claims ........ 16

B. CERTIFICATION OF THE CLASS IS APPROPRIATE. ........ 17

1. The Settlement Class Is Sufficiently Numerous. ........ 17

2. Questions of Law or Fact are Common to the Class. .... 18

3. The Class Representatives' Claims Are Typical of the Class. .... 18

4. The Class Representative and His Counsel Will Fairly and Adequately Protect the Settlement Class Members' Interests. .... 19

5. Common Questions of Law and Fact Predominate. .... 20

6. A Class Action is Superior to Alternative Methods. .... 20

C. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AS ALL FAIRNESS FACTORS UNDER FRCP 23(E)(2) HAVE BEEN MET. .... 21

1. The Class Representatives and Class Counsel Have Adequately Represented the Class [FRCP 23(e)(2)(A)]. .... 21

2. The Settlement Was Negotiated at Arm's Length [FRCP 23(e)(2)(B)]. .... 21

3. The Relief Provided for the Class is Adequate [FRCP 23(e)(2)(C)]. .... 22

i. The Cost, Risk, and Delay of Trial and Appeal [FRCP 23(e)(2)(C)(i)]. .... 22

ii. The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims [FRCP 23(e)(2)(C)(ii)]. .... 24

iii. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment [FRCP 23(e)(2)(C)(iii)]. .... 24

iv. Any Agreement Required to be Identified Under Rule 23(e)(23) [FRCP 23(e)(2)(C)(iv)]. .... 25

4. The Settlement Treats Class Members Equitably Relative to Each Other [FRCP 23(e)(2)(D)]. .... 25

D. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED .... 27

E. THE COURT SHOULD APPOINT PHOENIX SETTLEMENT ADMINISTRATORS AS SETTLEMENT ADMINISTRATOR .... 28

F. PROPOSED SCHEDULE FOR REMAINING PROCEDURES .... 29

VI. DENYING THIS MOTION WOULD INVARIABLY HARM THE CLASS. .... 29

ii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND APPROVAL OF A COLLECTIVE ACTION SETTLEMENT UNDER THE FLSA

VII. CONCLUSION ........................................................................................................ 30

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. Inc. v.* Winsor,
521 U.S. 591 (1997) ... 15, 18

*Avilez v. Pinkerton Gov't Servs.*,
286 F.R.D. 450 (C.D. Cal. 2012) ... 14

*Bay Ridge Operating Co. v. Aaron*,
334 U.S. 446 (1948) ... 15

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ... 9

*Brinker Rest. Corp. v. Superior Court*,
53 Cal. 4th 1004 ... 11, 12

*Busk v. Integrity Staffing Sols., Inc.*,
713 F.3d 525 (9th Cir. 2013) ... 13

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ... 19

*Curtis, et al. v. Irwin Industries*,
USDC CD, Case No. 2:15-cv-02480 ... 5

*Deaver v. Compass Bank*,
No. 13–cv–00222–JSC, 2015 WL 4999953 (N.D. Cal. 2015) ... 20

*Durell v. Sharp Healthcare*,
183 Cal.App.4th 1350 (2010) ... 13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156, 173 (1974) ... 25

*Escalante v. Cal. Physicians' Servs.*,
309 F.R.D. 612 (C.D. Cal. 2015) ... 16

*Espinoza v. Domino's Pizza, LLC*,
2012 WL 5462550 (C.D. Cal. Nov. 7, 2012) .... 24

*Finder v. Leprino Foods Co.*,
No. 1:13–CV–2059 AWI–BAM, 2015 WL 1137151 (E.D. Cal. Mar. 12, 2015) .... 14

*Franco v. Ruiz Food Products, Inc.*,
2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .... 23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .... 16, 17, 18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .... 22

*In re Tableware Antitrust Litig.*,
484 F.Supp.2d 1078 (N.D. Cal. 2007) .... 1

*Ingalls v. Hallmark Retail, Inc.*,
2009 WL 10674054 (C.D. Cal. Oct. 16, 2009) .... 24

*Jefferson v. Beta Operating Company, LLC*,
USDC CD, Case No. 2:15-cv-04966 .... 5

*Jensen v. Safety Equip. Corp*,
USDC CD, Case No. 2:18-cv-02890 .... 10

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988) .... 9

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .... 19

*Mamika v. Barca*,
68 Cal. App. 4th 487 (1998) .... 14

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) .... 13

*McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.*, 268 F.R.D.
670 (W.D. Wash. 2010) .... 16

*Newton v. Parker Drilling Management Services, Inc.*,
USDC CD, Case No. 2:15-cv-02517 .......... 5

*Newton v. Parker Drilling Mgmt. Servs., Ltd.*,
881 F.3d 1078 (9th Cir. 2018) .......... passim

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) .......... 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .......... 20

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
139 S. Ct. 1881 (2019) .......... passim

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) .......... 17

*Rutti v. Lojack Corp.*,
2012 WL 3151077 (C.D. Cal. July 31, 2012) .......... 19

*Safeway v. Superior Court of Los Angeles County*,
238 Cal. App. 4th 1138 (2015) .......... 13

*Saunders v. Superior Court*,
27 Cal.App.4th 832 (1994) .......... 13

*Sec'y United States Dep't of Labor v. Am. Future Sys., Inc.*,
873 F.3d 420 (3d Cir. 2017) .......... 12

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .......... 25

*Thomas v. TD Ameritrade, Inc.*,
No. C08-02397 WDB, 2009 WL 8730175 (N.D. Cal. Sept. 29, 2009) .......... 24

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) .......... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2nd Cir. 2005) .......... 9

vi

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND APPROVAL OF A COLLECTIVE ACTION SETTLEMENT UNDER THE FLSA**

*Williams, et al., v. Brinderson Constructors, Inc.*,
USDC CD, Case No. 2:15-cv-02474 .................... 5

*Wright v. Linkus Enters., Inc.*,
259 F.R.D. 468 (E.D. Cal. 2009) .................... 19

**STATUTES**

Cal. Lab. Code § 201 .................... 14

Cal. Labor Code § 202 .................... 14

Cal. Labor Code § 203 .................... 14, 21

Cal. Labor Code § 226 .................... 10, 11, 12

Cal. Labor Code § 226.7 .................... 12, 13

Cal. Labor Code § 512 .................... 12

Cal. Labor Code § 2698 *et seq.* (PAGA) .................... 3

29 U.S.C. § 207 .................... 15

29 U.S.C. § 211 .................... 11

43 U.S.C. § 1331 .................... 9

43 U.S.C. § 1333 .................... 4, 9

**RULES**

Federal Rule of Civil Procedure 23 .................... 1, 15, 18

**TREATISES**

Manual for Complex Litigation (4th ed. 2004) § 21.632 .................... 15

Newberg on Class Actions (4th ed. 2002) .................... 23, 24

**REGULATIONS**

29 C.F.R. § 778 .................... 21

29 C.F.R. § 778.116 .................... 15

29 C.F.R. § 785.18 .......... 12

8 Cal. Code Regs. § 11050 .......... 11, 12

Cal. Wage Order 5-2001 .......... 11

viii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND APPROVAL OF A COLLECTIVE ACTION SETTLEMENT UNDER THE FLSA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Kyle Jensen ("Plaintiff") moves this Court for an order preliminarily approving a proposed Joint Stipulation of Class and Collective Action Settlement, PAGA Settlement and Release of *Jensen v. Secorp Industries* (hereinafter sometimes referred to as the "Settlement Agreement") entered by Plaintiff and Defendant Secorp Industries, ("Secorp"). A true and correct copy of the Settlement Agreement and its Exhibits 1-6 are attached to the concurrently filed Declaration of Andrew C. Ellison ("Ellison Decl.") as Exhibit A.

The settlement is non-reversionary and provides for a Gross Settlement Value ("GSV") of Two Hundred Thousand dollars ($200,000.00), allocated 80% to Rule 23 California Class claims and 20% to opt in members of the FLSA collective. The GSV will be divided among approximately 15,385 Rule 23 California Shifts, who overlap with approximately 9,288 FLSA collective shifts. Moreover, ifthe estimates of the number of either class has increased by ten percent (10%) or more as of the time they were made, then Secorp shall increase the Gross Settlement Value on a pro-rata basis set forth in the parties' settlement agreement. The GSV is inclusive of Class Counsel's fees up to 35 percent of the GSV ($70,000.00), plus costs not to exceed $10,000, plus Service Award for Plaintiff Jensen not to exceed $6,000.00, and Plaintiff Beatty, not to exceed $4,000.00 plus claims administration costs not to exceed $7,950.00, as well as California Labor Code Private Attorneys General Act ("PAGA") penalties in the total amount of $4,000.00 of which 75% ($3,000.00) is allocated to the California Labor and Workforce Development Agency. The remaining 25% (i.e., $1,000.00) is allocated to the California Class Members who worked between February 9, 2017 and the date of preliminary approval (i.e., the PAGA period).

The terms of the settlement are fully set forth in the Settlement Agreement. For reasons explained herein, this is an excellent result for the California and FLSA Classes, especially following the U.S. Supreme Court's decision in *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881 (2019) ("*Parker Drilling*") to reverse the Ninth Circuit in *Newton v. Parker*

*Drilling Mgmt. Servs., Ltd.*, 881 F.3d 1078 (9th Cir. 2018) ("*Newton*"), and the decisions of this Court dismissing the cast majority of the class' claims, minimizing the value of this case.

The settlement readily satisfies the standard for preliminary approval – it is within the range of possible approval to justify sending notice to members of the FLSA and California Classes and scheduling final approval proceedings. *See In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Accordingly, Plaintiff seeks an order: (1) granting preliminary approval of the settlement and Settlement Agreement; (2) certifying the FLSA and California Classes for settlement purposes only; (3) approving the settlement of the collective claims under the Fair Labor Standards Act ("FLSA") and class claims under California law; (4) approving the proposed manner of mailing, size, and content of the California Notice Packet, including the California Class Form, California Class Notice, and Exclusion Letter; and the FLSA Notice Packet, including the FLSA Collective Form, FLSA Collective Action Notice, and FLSA Opt In Form, which are attached as <u>Exhibits 1 to 6</u> of the Settlement Agreement; (5) appointing Phoenix Settlement Administrators as Settlement Administrator; (6) appointing Strauss & Strauss, APC to represent the Settlement Class as Class Counsel; (7) appointing Plaintiffs Kyle Jensen and Christopher Beatty as Class Representatives; and (8) establishing a timetable for final approval of the Settlement.

## II. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

The following sets for the Plaintiffs' statement of the claims and defenses.

At all times relevant, Secorp operated on oil and gas platforms situated offshore in federal waters on the Outer Continental Shelf ("OCS") off the coast of California and in the Gulf of Mexico. Declaration of Kyle Jensen ¶ 4 ("Jensen Decl.").

Plaintiffs in Jensen I were employed by Secorp to work as "Safety Specialists" on platforms in federal waters in the Santa Barbara Channel, California while the Plaintiffs in Jensesn II (2:19-CV-07980-RGK-GJS) performed similar duties on the Outer Continental Shelf on oil platforms off the coasts of other states. Jensen Decl. ¶¶ 2-5. Plaintiffs were required to remain on the platform for periods of 24 hours or more, staying offshore overnight during the entire shift (known in the industry as a "hitch"). Jensen Decl. ¶ 6. Plaintiffs shifts typically

lasted 7-14 straight days at work followed by several days off. *Id*. Plaintiffs typically worked 12 hours "on duty," (from 6:00 a.m. to 6:00 p.m.) followed by 12 hours of "controlled standby" (6:00 p.m. to 6:00 a.m.). *Id*. Plaintiffs allege that they were only given one meal and two rest breaks per each 12-hour "on duty" period. Jensen Decl. ¶ 7. Other Secorp employees worked similar shifts, were paid similarly and had the same restrictions as Plaintiff. Jensen Decl. ¶¶ 7-8, 11.

Plaintiff Kyle Jensen commenced a Lawsuit by filing, on February 9, 2018 a complaint against Defendant Secorp Industries which was removed to the United States District Court for Central District of California, Case No. 2:18-cv-02890-RGK-GJS ("Jensen I") asserting claims under California law including overtime wages, failure to provide lawful meal and rest periods, failure to reimburse business expenses, unfair competition, and paystub violations. ECF No. 1. Plaintiff filed a First Amended Complaint ("FAC") on June 6, 2018, adding a claim for civil penalties under PAGA. ECF No. 21. On June 13, 2018, by stipulation, the parties filed a Second Amended Complaint ("SAC") to correct the erroneously named Defendant entity ECF No. 23. By stipulation, on September 14, 2018, the parties filed a Third Amended Complaint, ("TAC") to add named Plaintiff Beatty, a former employee, and his claim for Waiting Time violations. ECF No. 46. On January 11, 2019, the Supreme Court granted certiorari on Parker Drilling. *Parker Drilling Mgmt. Srvs., Ltd v. Newton* 139 S. Ct. 914 (2019). *Parker Drilling* was argued on April 16, 2019, and decided on June 10, 2019. The Supreme Court held that Plaintiffs' overtime claims on the Outer Continental Shelf were not valid, but remanded issues relating to the additional claims.

Plaintiffs argued Secorp "fail[ed] to compensate Plaintiffs and the Putative Class at the correct overtime rate of pay for overtime hours worked because Defendants failed to include the following in the Putative Class's regular hourly rates of pay: (i) Compensation for performance-related bonuses; (ii) Compensation for meals provided by the employer; and iii) Compensation for lodging provided by the employer." Plaintiff argued these issues were not resolved by the Supreme Court in *Parker* Drilling. Secorp then moved for Judgment on the Pleadings. The TAC was dismissed, as the court ruled that the remaining claims for meal period and rest break

violations did not apply on the Outer Continental Shelf. ECF No. 66 to Case No. 19-56088. The Court also did not permit Plaintiffs to amend to add claim for violation of the FLSA. Plaintiffs' appeal is pending in the Ninth Circuit Court of Appeals. Plaintiffs filed this second action (Jensen II) on September 13, 2019, alleging violations of the FLSA, assigned to case No. 2:19-CV-07980-RGK-GJS. The court dismissed that action as to all claims arising prior to September 24, 2019, which were already on appeal in Jensen I, and before the Ninth Circuit could consider any appeal from that dismissal, the Parties reached a settlement of both Lawsuits (Jensen I and II) before Ninth Circuit Mediator Sasha Cummings, which the Parties seek approval of herein. The parties have moved to consolidate Jensen I and Jensen II for the purpose of approval of the settlement and dismissal of both actions.

During several years of litigation, the parties worked diligently to resolve the matter(s). Plaintiffs propounded written discovery, reviewed thousands of pages of records, and took depositions of corporate representatives. Secorop shared records disclosing the number of overnights worked, and average rates of pay, so that Plaintiffs could evaluate Secorp's potential exposure. Secorp also shared corporate financial information so that Plaintiffs could evaluate the financial condition of Defendant.

## III. RISKS INHERENT IN FILING THIS CASE

Plaintiff initiated this action before a definitive ruling on whether California law applied to the OCS as surrogate federal law under OCSLA (43 U.S.C. § 1333(a)(2)(A)). Ellison Decl. ¶ 11. At least four other cases pending had found that California labor law did not apply to the OCS under OCSLA.[1] The leading case *Newton v. Parker Drilling Mgmt. Servs., Ltd*., 881 F.3d 1078 (9th Cir. 2018) ("*Newton*") was under appeal at the United States Supreme Court. Plaintiff's counsel agreed to represent Plaintiffs against Secorp knowing they would be facing an uphill legal battle, as the case raised issues of first impression. Ellison Decl. ¶¶ 12-17.

[1] *See Williams, et al., v. Brinderson Constructors, Inc.*, USDC CD, Case No. 2:15-cv-02474; *Curtis, et al. v. Irwin Industries*, USDC CD, Case No. 2:15-cv-02480; *Jefferson v. Beta Operating Company*, LLC, USDC CD, Case No. 2:15-cv-04966; and *Newton v. Parker Drilling Management Services, Inc.*, USDC CD, Case No. 2:15-cv-02517.

Given the adverse Supreme Court ruling in *Parker Drilling*, regarding the application of California wage and hour law, Plaintiff sought to pivot to less valuable, uncertain, but broader reaching FLSA claims. Additionally, Defendant shared financial statements with Plaintiffs' accountant, which demonstrated a tenuous financial position, that could push Defendant into bankruptcy if any judgment substantially exceeding the settlement amount were awarded. *Id*. ¶ 38. The settlement secures an average recovery of $396.20 for FLSA collective members, and $1,842.79 for California Rule 23 Class members is a significant achievement. Ellison Decl. ¶ 19.

## IV. SUMMARY OF THE PROPOSED SETTLEMENT

### A. California Class Members, FLSA Collective Members, Settlement Class and Settlement Periods

**California Class Members**

California Class Members are all current and former hourly employees of Defendant, who worked for Defendant on oil platforms on the Outer Continental Shelf off the California coast for shifts of 12 hours or more since February 9, 2014.

Twenty percent (20%) of the California Settlement Allocation will be distributed to a Waiting Time Subclass, which is defined as California Class members whose employment ended between February 9, 2015 and the date of preliminary approval. Settlement Agreement ¶ 60.

Ten percent (10%) of the California Settlement Allocation will be distributed to a wage statement subclass who worked for Secorp from February 9, 2017 and the date of preliminary approval. *Id*. at ¶ 62.

California Class Members who worked between February 9, 2017 and the date of preliminary approval will divide the 25% portion of the PAGA payment of $1,450. Settlement Agreement ¶ 35.

**FLSA Collective Members**

FLSA collective members are all current and former hourly employees of Defendant, who worked for Defendant a multi-day hitch on an oil platform on the Outer Continental Shelf

off any coast of the United States from September 13, 2016 through the date of preliminary approval ("Collective Members"). Members of the California Class who worked off the coast of California after September 13, 2016 will have both FLSA opt in claims, as well as Rule 23 opt out claims for that period of time.

**Claimants/Settlement Class**

The "Claimants" will consist of all California Class Members who do not properly opt out of the Settlement Agreement ("California Class"), and all participating Collective Members who consent to become party plaintiffs to the Fair Labor Standards Act collective action by submitting a form so indicating ("FLSA Class") (collectively, the "Settlement Class Claimants").

**Settlement Periods**

The settlement period for the California Class will be February 9, 2014 through the date of preliminary approval. The settlement period for the FLSA Class will be September 13, 2016 through the date of preliminary approval. The settlement period for all members of the California Class releasing their claims under the California Labor Code Private Attorneys General Act, Labor Code section 2698 *et seq.* will be February 9, 2017 through the date of preliminary approval. The periods for the Waiting Time and Wage Statement sublclasses are defined above.

**B. Gross Settlement Value and Net Settlement Value**

Secorp agreed to pay a non-reversionary "Gross Settlement Value" of $200,000.00 inclusive of all payments to Settlement Class members including fees, costs, expenses, awards, penalties, etc. Settlement Agreement at ¶¶ 30-33. Payroll taxes are paid separately and are not included in the Gross Settlement Value. Settlement Agreement ¶ 33.

The Gross Settlement Value is subject to an Escalator Clause: Defendant represents that as of June 10, 2020 there were an estimated 15,385 shifts (California Class) and 9,288 (FLSA Collective), through the date of the MOU signed by the parties. Ifthe actual number of either groups of shifts through the date of the MOU has increased by ten percent (10%) or more over the estimate given as of that date, then Defendant shall increase the Gross Settlement Value

equal to the percentage increase in the actual number of shifts through the date of the MOU. For example, if the actual number of Shifts by the California Class through the date of the MOU exceeds the Class Period Shifts Estimate by 12 percent, the Gross Settlement Amount shall increase by 12 percent. Settlement Agreement ¶ 71(g).

The Net Settlement Value is the Gross Settlement Value less the Fee and Expense Award, the Service Award, the Private Attorneys General Act of 2004 ("PAGA") Payment and Administration Costs, as approved and awarded by the Court. Settlement Agreement ¶ 45. The Net Settlement Value herein, assuming all terms and conditions are otherwise approved, will equal $99,050.00.

**C. Class Counsel Fees and Costs**

Secorp will not object to an award of attorneys' fees to Class not to exceed 35% of the Gross Settlement Value (or $70,000.00) and up to $10,000.00 in costs. Settlement Agreement ¶ 23.

**D. Service Awards to Named Plaintiff**

Plaintiffs Jensen and Beatty will seek Service Award up to $6,000.00, and $4,000.00 respectively, and Secorp will not object to the requested Service Award up to this amount. Settlement Agreement ¶ 57. The settlement of the action is not contingent on the Plaintiff's receipt of any Service Award out of the Gross Settlement Value. *Id.* at 58(e).

**E. Settlement Shares**

From the Net Settlement Value, the Settlement Administrator will calculate each Settlement Class member's Individual Settlement Payment based on a prorated bases correlating to the number of shifts worked per individual compared to the overall number of shifts in the applicable class as articulated below:

Payments to all participating Settlement Class Claimants:

Twenty percent (20%) of the Net Settlement Value is allocated for payments to the FLSA Class, anticipated to be $19,610.00 (less the employee's and employer's withholdings and taxes associated with the wage portion of the individual settlement payments). Eighty percent (80%) of the Net Settlement Value is allocated for payments to the California Class,

anticipated to be $78,440.00 (less the employees and employer's withholdings and taxes associated with the wage portion of the individual settlement payments). Members of the Waiting Time Subclass, Wage Statement Subclass, draw additional allocations from the California Class Primary Fund.

PAGA Amount:

Four Thousand Dollars and Zero Cents ($4,000.00) of the Gross Settlement Value has been designated as the "PAGA Amount" as described above. Twenty-five percent ($1,000.00) will be distributed to California Class Members based on each participating Settlement Class Claimant's proportionate shifts worked during the statutory period. Settlement Agreement ¶ 50.

**F. Selection of Phoenix Settlement Administrators as Settlement Administrator**

The parties have agreed that Phoenix Settlement Administrators ("Phoenix") will act as Settlement Administrator. Settlement Agreement ¶ 51. Class Counsel have obtained a "not to exceed" quote from Phoenix of $7,950. Settlement Agreement ¶ 2; Ellison Decl., Exhibit B. Phoenix is more than capable to handle the administration of the Settlement as evidenced by their impressive resume. Ellison Decl., Exhibit C.

**G. Rule 23 Opt-Outs, FLSA Opt-Ins and Objections to Settlement**

California Class

Within 20 calendar days of preliminary approval of the Settlement Agreement, the settlement administrator shall send the California Notice Packet to California Class Members to advise them, among other necessary things, of their minimum settlement allocations, and their opportunity to opt out of the California Class. Settlement Agreement ¶ 81. California Class members are not required to submit a claim form to participate. The allocations of any California Class Members who opt out will be allocated pro rata to the participating California Class members at the time of settlement disbursement. California Class Members will have forty-five (45) calendar days after the date that the Settlement Administrator mails the California Class Notice to submit a written exclusion letter and will have forty-five (45) days following the date on which the Settlement Administrator first mails the California Notice Packet (defined below) to the California Class Members to submit objections. Settlement Agreement at ¶ 48.

California Class members who do not request exclusion may object to the Settlement Agreement as explained in the California Class Notice by filing a written objection with the court. *Id.* at ¶ 92 (See Exhibit 2 to Stipulation of Settlment).

Any checks that remain uncashed after 90 days will be voided and, if the total amount of such unclaimed funds exceeds $20,000.00, their amounts will be allocated in a second allocation to participating California Class Members who cashed their initial checks ("Second Distribution"). *Id* at ¶ 95. Any Second Distribution checks not negotiated after 90 days will be voided— or any initially unclaimed funds, if the amount is $20,000.00 or less — and the amount will be allocated to a suitable cy pres recipient, including at Plaintiff's choice, the Legal Aid Foundation of Los Angeles (www.lafla.org). *Id.*

FLSA Collective

Within 20 calendar days of preliminary approval of the Settlement Agreement, the settlement administrator shall send a FLSA Notice Packet to FLSA Collective Members to advise them of their minimum settlement allocations, their opportunity to opt-in to the FLSA Collective. *Id*. at ¶ 81. Individuals who receive the FLSA notice will have forty-five (45) days following the date on which the Settlement Administrator first mails the Notice Packet to return the opt-in form. *Id*. at ¶ 47. The Settlement Administrator will make substantial follow up efforts to ensure that members of the FLSA collective have had a fair opportunity to opt-in. Settlement Agreement ¶¶ 82-85. The allocations of any Collective Members who do not opt in will be allocated pro rata to the participating Collective Members at the time of settlement disbursement. *Id*. at ¶ 95.

**H. Scope of Release for California Class, FLSA Collective, and Plaintiff**

**1. Limited Release By the California Class**

Plaintiff and every member of the Settlement Class (except those who opt out of the California Class or do not opt into the FLSA Collective) will fully release and discharge Secorp, including the "Released Parties" as defined in the Settlement Agreement Settlement Agreement ¶ 72.

**2. Release by the FLSA Collective**

As of the Payment Obligation and Class Release Date, the Collective Members, known in the Settlement Agreement as "FLSA Class Members," who submit a timely and valid FLSA Opt In Form will fully release the FLSA Class Released Claims and agree not to sue or otherwise make a claim against any of the Released Parties for the FLSA Class Released Claims. Settlement Agreement ¶ 73. The Individual Settlement Payments shall be paid to FLSA Class Claimants (i.e., those Collective Members who opt in) specifically in exchange for the release of the Released Parties from the FLSA Class Released Claims and the covenant not to sue concerning the FLSA Class Released Claims. *Id*.

**3. General Release by Plaintiff**

In consideration for his Service Award, named Plaintiffs Jensen and Beatty agreed to additionally release all known and unknown actions, causes of action, suits, liabilities, claims, and demands from the beginning of time to the date of his full execution of the Settlement Agreement. Settlement Agreement ¶ 75.

**I. California and FLSA Notice Packets**

The parties have agreed on a California and FLSA Notice Packets to be mailed to the Settlement Class members, as applicable. Settlement Agreement ¶¶11, 22, 29, 30, 34, 46. The California Notice Packet is comprised of the California Class Form, California Class Notice, and Exclusion Letter. The FLSA Notice Packet is comprised of the FLSA Collective Form, FLSA Collective Action Notice, and FLSA Opt In Form. All of these documents are attached to the Settlement Agreement as Exhibits 1-6.

The California Class Notice informs the California Class Members of the essential terms of the California settlement, their right to opt out of the settlement, and their right to object thereto. The California Class Notice will be mailed by First Class Mail by the Settlement Administrator, who will perform a skip-trace on returned mail and re-mail the Class Notice to Settlement Class members for whom new addresses are found. Settlement Agreement ¶ 82.

**J. Fair, Adequate and Reasonable Settlement**

The parties believe that the Settlement Agreement, reached after extensive negotiations, is a fair, adequate, and reasonable resolution of the action and have arrived at the Settlement

Agreement in arms-length negotiations, considering all relevant factors, present and potential. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116 (2nd Cir. 2005). See *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

## V. LEGAL ARGUMENT[2]

### A. Plaintiff's Legal Theories.

The claims asserted by Plaintiff arise from work performed on the oil platforms located more than three miles off the coast of the United States, in an area known as the Outer Continental Shelf ("OCS"). Plaintiff's Rule 23 claims arise under California law, which Plaintiff alleged was adopted as surrogate federal law under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* ("OCSLA"). OCSLA extends federal law to the subsoil and seabed of the OCS and all attachments thereon. 43 U.S.C. § 1333(a)(1). OCSLA also deems the adjacent State's laws to be surrogate federal law "[t]o the extent that they are applicable and not inconsistent with" other federal law. 43 U.S.C. § 1333(a)(2)(A). Plaintiffs' FLSA claims extend to individuals employed on the OCS, off of California as well as the Gulf of Mexico.

The decision in *Parker Drilling* made it clear that California overtime and minimum wage laws are not applicable on the OCS, but there remained uncertainty with respect to Plaintiff's remaining meal and rest claims. In *Parker Drilling*, the Supreme Court articulated a new standard for when state laws apply to work performed on the OCS: "[W]here federal law addresses the relevant issue, state law is not adopted as surrogate federal law on the OCS." The

[2] While plaintiffs set forth their legal theories below, Secorp hotly contests them. Secorp believes that the Supreme Court's rational in *Newton* will apply to, and dispose of, Plaintiffs' remaining California based claims. Secorp believes that it all times complied with the operative FLSA requirements, and that Plaintiffs will lose all of their FLSA claims, Secorp believes that the Orders of this Court dismissing Jensen I and dismissing the vast majority of claims and liability in Jensen II will be upheld.

Supreme Court applied this new standard to plaintiff Newton's overtime and minimum wage claims and held that, because federal laws addressed minimum wage and overtime protections, California minimum wage and overtime laws could not be adopted as federal law on the OCS. The Court did not address plaintiff Newton's other state law claims, which included California Labor Code-based claims for meal periods, waiting-time penalties, and PAGA penalties and a claim for unfair competition under Business and Professions Code section 17200. Rather, the Court remanded the case to the trial court for further proceedings consistent with its opinion.

Therefore, under the *Parker Drilling* decision, Plaintiffs' claims for minimum wages and overtime fail as a matter of law. However, regarding Plaintiffs' other claims arising under state law, there are only three cases that have applied the test enunciated in *Parker Drilling*. *See Jensen v. Safety Equip. Corp*, U.S.C.D. Case No. 2:18-cv-02890 (*Jensen I*); *Newton v. Parker Drilling Management Services, Inc.*, U.S.C.D. Case No. 2:15-cv-02517 (on remand); and *Mauia v. Petrochem*, U.S.N.D. Case No. 3:18-cv-01815. Thus, while Plaintiffs believe all the remaining claims should survive, the viability of these claims remains untested, and this court is one of the three mentioned above that has definitively found that those claims do not survive (currently on appeal). Therefore, the $200,000 Gross Settlement Value is a very good result for Plaintiff and the potential California Class Members and Collective Members.

**4. Labor Code 226 Claim**

California Labor Code section 226(a) provides in pertinent part that the employer shall provide their employees with written paycheck stubs showing: "(1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j)…, (5) net wages earned…, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee…." Lab. Code § 226(a). Section 226(e) provides penalties for violations of § 226(a). Plaintiff alleges that Secorp violated section 226 because it provided Plaintiff with pay stubs that did not include meal and rest period premiums thereon, the actual gross and net wages earned, and the correct hourly rates in effect. These latter issues are derivative of Plaintiff's claim that Secorp failed to pay overtime at the rates required by federal law.

12

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND APPROVAL OF A COLLECTIVE ACTION SETTLEMENT UNDER THE FLSA

No federal laws address the issues of whether paycheck stubs must be given to employees, the contents of those paycheck stubs, or the penalty for an employer's failure to provide compliant paycheck stubs. The FLSA only requires that employers keep accurate records of employee hours worked as set forth in 29 U.S.C. § 211(c). Although Plaintiffs believe that under *Parker Drilling* their claims under Labor Code section 226 should remain viable, the chance that the Ninth Circuit in *Jensen I* would find the FLSA addresses the same issue calls for a discount of this claim for settlement purposes.

**5. Rest Period**

California Industrial Welfare Commission Wage Order 16-2001 ("Wage Order 16") requires employers to provide duty-free rest periods of "ten (10) minutes net rest time for every four (4) hours worked, or major fraction thereof." 8 Cal. Code Regs. § 11160(11)(A). Interpreting a similar rest period standard set forth in Wage Order 4-2001, the California Supreme Court held that an employee working a shift of between 10 and 14 hours must be provided with *three* 10-minute rest periods. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1029 (2012).

An employer who fails to provide rest periods in accordance with the applicable wage order "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the ... rest ... period is not provided." Lab. Code § 226.7(c). Plaintiff alleges that Secorp is liable for rest period premiums because it did not provide Plaintiff and the California Class Members with a 10-minute, duty-free rest period for every four hours worked. Given that the California Class Members allegedly worked shifts of 12 hours, Secorp was required to provide them with *three* 10-minute rest periods. Secorp allegedly only provided *two*. Jensen Decl. ¶ 9. Plaintiff's counsel believes this claim would relate back to the initial filing of the action, given that it arises from the same facts and would require analyzing the same evidence.

Plaintiffs' rest period claim survives the *Parker Drilling* analysis because federal law does not "address the relevant issue" of whether workers must be provided with rest periods because the Fair Labor Standards Act (FLSA) imposes no rest period requirements. *Sec'y*

*United States Dep't of Labor v. Am. Future Sys., Inc.*, 873 F.3d 420, 425 (3d Cir. 2017). One of the FLSA's implementing regulations does discuss rest periods, but only in the context of whether rest periods, *if provided*, must be paid for as working time. 29 C.F.R. § 785.18. Because federal law does not address this relevant issue, Plaintiffs' believe that their rest period claims should ultimately survive the *Parker Drilling* analysis, but again, based on the chance the Ninth Circuit in *Jensen I* sees it otherwise, a discount of this claim was warranted.

**3. Meal Period Claim**

The California Labor Code and Wage Order 16 establish the parameters of lawful meal periods in the state. An employer may not employ an employee for a work period of more than five hours per day without providing the employee with an uninterrupted meal period of not less than thirty minutes. Lab. Code § 512(a); 8 Cal. Code Regs. § 11160(10)(A). "[Labor Code] section 512 requires a first meal period no later than the end of an employee's fifth hour of work." *Brinker*, 53 Cal. 4th at 1041. In the Second Amended Complaint, Plaintiff alleges that Secorp failed to abide by California's meal period laws by not meal periods for every five-hour work period. Second Amended Complaint, CM/ECF Doc. No. 59. Secorp provided meal periods to Plaintiff and the California Class, but allegedly not until *after the* end of the employees' fifth hour of work; employees who started working at 6 a.m. received their meal period at 12:00 p.m., which was the end of their sixth hour of work. SAC, Doc. 59; Jensen Decl. ¶ 7.

As with rest periods, no federal law "addresses the relevant issue" of whether employees must be provided with meal periods for every five hours worked. The FLSA is silent on this issue. *See Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 531 (9th Cir. 2013), *rev'd on other grounds*, 574 U.S. 27 (2014) ("FLSA does not require compensation for an employee's lunch period….") While Plaintiffs believe that California's meal period laws should be adopted as the applicable law on the OCS, there is a risk that the Ninth Circuit in *Jensen I* would disagree and apply of federal law, calling for a discount of this claim.

///

**4. Unfair Competition Claim**

California's Unfair Competition Law (UCL), Business and Professions Code section 17200 provides the following: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair, or fraudulent business act or practice...." Bus. & Prof. Code § 17200. "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-839 (1994) (internal citations omitted); *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1359 (2010) ("an act or practice is 'unfair competition' under the UCL if it is forbidden by law"). Premium wages due under Labor Code section 226.7 for meal and rest period premiums are recoverable as restitution under the UCL. *See Safeway v. Superior Court of Los Angeles County*, 238 Cal. App. 4th 1138, 1155-56 (2015) (review denied).

Plaintiff seeks restitution of the meal and rest period premiums denied to the California Class by Secorp's alleged failure to provide lawful meal and rest periods. SAC, CM/ECF Doc. No. 36-2, Ex. A. Under the *Parker Drilling* analysis, the relevant issue is whether there is any federal law that addresses the issue of unfair competition in the context of providing an additional remedy for the failure to provide meal or rest periods. Plaintiffs believe that there is no such federal law. *See Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 908 (9th Cir. 2002). Also, federal law does not require the provision of meal or rest periods, as discussed *supra*, so there can be no federal law that provides an additional remedy for not providing lawful meal or rest periods. For these reasons, Plaintiff's UCL claims should survive the *Parker Drilling* analysis in the Ninth Circuit review of *Jensen I*. However, in the event the Ninth Circuit were to disagree, a discount of this claim is warranted.

**5. Waiting-Time Penalty Claim**

Labor Code sections 201 and 202 require the payment of all wages owed at an employee's termination or resignation. Labor Code section 203 establishes a penalty of up to thirty days of wages when an employer willfully fails to comply with sections 201 and 202. The waiting-time penalty is an amount equal to the employee's daily rate of pay for each day the wages remain

unpaid, up to a maximum of thirty (30) calendar days. *Mamika v. Barca*, 68 Cal. App. 4th 487, 494 (1998). Courts within the Ninth Circuit have held that the failure to pay rest period premiums in an employee's final paycheck may trigger liability for a waiting-time penalty under section 203, so long as the failure to pay is willful. *See Finder v. Leprino Foods Co.*, No. 1:13–CV–2059 AWI–BAM, 2015 WL 1137151, at *5 (E.D. Cal. Mar. 12, 2015); *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 465 (C.D. Cal. 2012).

Under the *Parker Drilling* analysis, the relevant issue is whether there is any federal law that addresses the issue of the timeframe within which an employee must be paid his or her final wages. There is no such federal law, and thus Plaintiffs believe their section 203 claim should survive a *Parker Drilling* analysis. However, each of the district courts to address this matter to date have found otherwise. These findings call for a significant discount of these penalties for settlement purposes.

**6. FLSA claims for unpaid minimum and overtime wages**

The FLSA requires that employers compensate employees at the rate of not less than the federal statutory minimum wage rate for each hour worked up to forty (40) hours in a work week. The FLSA also requires employers to pay non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a). The employee's regular rate generally includes "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e); cf. *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948) ("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments."). Even "payments" such as an employer's provision of meals or lodging must be considered. 29 C.F.R. § 778.116. At all relevant times, Defendants have failed to compensate Plaintiff and the Collective Members at the rate not less than the federal statutory minimum wage rate for each regular hour worked. Further, the rate used by Secorp to calculate the regular rate for Collective Members was allegedly lower than it should have been because it did not include the value of their free meals and lodging received while working on the OCS platforms. There is little doubt that these provisions apply on the OCS under *Parker Drilling*, as the

Supreme Court has expressly held that minimum wage and overtime claims on the OCS are resolved exclusively under federal law. Nevertheless, the limited number of cases applying these claims to the OCS platforms, coupled with the precarious financial condition of Secorp warranted the discount of this claim for settlement.

**B. Plaintiffs assert That Certification of the Class is Appropriate[3].**

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement class is a proper class for settlement purposes. *See generally* Fed. R. Civ. P. 23(e); Manual for Complex Litigation (4th ed. 2004) § 21.632. Courts routinely and properly certify classes for settlement purposes only and the proposed certification of the class is entirely consistent with the applicable authorities. *Amchem Prods. Inc. v.* Winsor, 521 U.S. 591, 619-29 (1997). Certification of a class under Rule 23 requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). All four elements are satisfied here.

**1. The Settlement Class Is Sufficiently Numerous.**

The numerosity requirement mandates that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In addition, the class should be "ascertainable," meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). As of the completion of the MOU following mediation in June, 2020, there were approximately 43 California Class members, in California and 50 FLSA collective members nationwide, many of them overlapping. Ellison Decl. ¶ 24. This is enough to satisfy numerosity and ascertainability requirements. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Courts have certified classes of fewer than 40 individuals under Rule 23, so long as the joinder of all individuals is impracticable. *McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 673 (W.D. Wash. 2010) (collecting cases and certifying

[3] The settlement agreement provides that Secorp agrees to this certification for settlement purposes only, and that if the settlement is not fully and finally approved, it reserves all objections and certifications to class certification.

class of 27 individuals); *Escalante v. Cal. Physicians' Servs.*, 309 F.R.D. 612, 618 (C.D. Cal. 2015) (finding a class of 19 still sufficiently numerous).

**2. Questions of Law or Fact are Common to the Class.**

The commonality requirement requires that there be "questions of law or fact to the class." Fed. R. Civ. P. 23(a)(2). "A class has sufficient commonality 'if there are questions of fact and law which are common to the class." *Hanlon*, 150 F.3d at 1019. The commonality requirement should be "construed permissively," meaning that "[a]ll questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* Here, Plaintiff alleges that all California Class and Collective Members were subject to the same wage and hour policies and practices as articulated in company handbooks and policy manuals. Ellison Decl. at ¶ 7; Jensen, Beatty Decls. at ¶¶ 7-8, 11. Given the unique nature of OCS oil operations, and the need for uniformity for safety reasons, it is no surprise that the policies and procedures giving rise to the claims in this case were applied uniformly as to all members of all of the California Class and FLSA Collective. The commonality requirement is met.

**3. The Class Representatives' Claims Are Typical of the Class.**

The next requirement of Rule 23(a) is typicality, which focuses on the relationship of facts and issues between the class and its representatives. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Here, Plaintiffs represent all California Class and Collective Members who allegedly were not properly compensated during the applicable California and/or FLSA Class Period due to the same unlawful policies and practices of Secorp, e.g., its alleged class-wide practice of not providing timely meal and rest periods, not including the value of meals and lodging in the regular rate of pay, and of

18

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND APPROVAL OF A COLLECTIVE ACTION SETTLEMENT UNDER THE FLSA

allegedly not paying meal and rest period premiums in employees' final wages. Accordingly, Plaintiffs' claims are typical of those of the California Class and Collective Members.

**4. The Class Representatives and Their Counsel Will Fairly and Adequately Protect the Settlement Class Members' Interests.**

Rule 23(a)(4) requires that the Class Representatives "fairly and adequately protect the interests of the class." Rule 23(g) requires the Court to consider Class Counsel's prior experience, knowledge and ability to properly represent the Class.

Here, Plaintiffs will fairly and adequately protect the interests of the California Class and Collective Members. Plaintiffs have no conflicts of interest with the other California Class and Collective Members and does not seek any different relief than that they seek on behalf of California Class and Collective Members. Additionally, Plaintiffs are committed to the action and have devoted time to assisting counsel with the action, providing documents and reviewing pleadings. Jensen, Beatty Decls. ¶ 19. Plaintiffs also assisted with preparation for settlement discussions. *Id.* Plaintiffs understand their role as class representative and have always tried to act in the interest of the other California Class and Collective Members. *Id.* ¶¶ 14, 28. Because Plaintiffs will fairly and adequately protect the interests of the Class and because they have no conflicts of interest with the other Settlement Class members the Court should appoint Plaintiffs Kyle Jensen and Christopher Beatty as Class Representatives for purposes of the settlement.

"An order certifying a class action ... must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). Courts must consider counsel's work in identifying or investigating claims; counsel's experience in handling the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Here, the work that Class Counsel performed provides a substantial basis for the Court's finding that they satisfy Rule 23(g)'s criteria. For instance, they identified the issues and brought the instant action on behalf of a sizeable number of California Class and Collective Members, interviewed many of these individuals to evaluate the strength of Plaintiff's arguments, reviewed payroll and other class data to construct a detailed damages model, participated in mediation and subsequent negotiations, and eventually settled the case.

Additionally, counsel have vast experience handling wage and hour cases, know the applicable law, and are committed to representing the Class. *See* Ellison Decl., ¶¶ 30, 47-55. Accordingly, the Court should appoint the law firm of Strauss & Strauss, APC, to represent the class as Class Counsel for purposes of the Settlement.

**5. Common Questions of Law and Fact Predominate.**

Rule 23(b)(3) requires the Court to find that: "the questions of law or fact common to class members predominate over any questions affecting only individual members." The predominance "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (quoting *Acmchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Here, Plaintifs allege that questions of law and fact predominate, especially because, by virtue of working on Secorp's OCS platforms, Plaintiffs and the California Class and Collective Members were all subject to the same policies, practices and procedures with respect to meal breaks, rest breaks, and final payment of wages. It is hard to imagine a situation where the questions or law and fact predominate more than in the confined (and highly regulated) setting of OCS platform work, where uniformity is paramount. Claims based on this type of commonly applied policy are generally sufficient for purposes of satisfying the requirements of Rule 23(b)(3). *See Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1065-68 (N.D. Cal. 2007).

**6. A Class Action is Superior to Alternative Methods.**

Rule 23(b)(3) also requires the Court to find that: "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Moreover, a class action is superior to individual adjudication because the alternative to a class case in the context of employment disputes is often no case at all because workers fear economic retaliation (termination). *Rutti v. Lojack Corp.*, 2012 WL 3151077, at *6 (C.D. Cal. July 31, 2012). Here, as discussed above, Plaintiff and the California Class and Collective Members were all subject to the same policies, practices and procedures. The straightforward relief sought (premium wages calculated based on data readily shared by Secorp pre-settlement), and the evidence

bearing thereon, is markedly less complicated than other cases where multiple working locations necessarily lends itself to disparate enforcement of policies. On the OCS platforms generally, disparate treatment of employees is simply not an option, especially considering the highly regulated nature of the oil-extraction industry and the heavy hand with which rules are applied on the OCS platforms by the leaseholders.

### C. The Court Should Preliminarily Approve the Settlement as All Fairness Factors Under FRCP 23(e)(2) Have Been Met.

Pursuant to Federal Rule of Civil Procedure, Rule 23(e), "[t]he claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval." The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlements minimize potentially substantial litigation expenses for both sides and conserves judicial resources. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Moreover, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Here, this settlement is fair, adequate, and reasonable under Rule 23(e)(2), as described below.

#### 1. The Class Representatives and Class Counsel Have Adequately Represented the Class [FRCP 23(e)(2)(A)].

The Class Representative and Class Counsel fairly and adequately protect the interests of the class. Plaintiff incorporates by reference Section (V)(B)(4), *supra*, regarding the adequacy of Plaintiff and his counsel.

#### 2. The Settlement Was Negotiated at Arm's Length [FRCP 23(e)(2)(B)].

Plaintiffs incorporate by reference the Statement of Facts and Settlement Procedure Section III, *supra*, regarding the arms-length nature of the settlement negotiations which took place over multiple mediations, settlement discussions, and were ultimately resolved before

Ninth Circuit Mediator Sasha M. Cummings. over an entire day, and which continued thereafter by telephone and via email.

**3. The Relief Provided for the Class is Adequate [FRCP 23(e)(2)(C)].**

The terms of the Settlement provide substantial monetary benefits to Settlement Class members and strongly support preliminary approval. It creates an average net settlement payment of $1,842.79 for each of the approximately 43 California Class members, which assumes a fee award of the maximum 35% of the Gross Settlement Value, a costs award of the maximum $10,000, administrative costs of $7,950, Service Awards of the maximum $6,000.00 and $4,000.00 to Jensen and Beatty, and PAGA penalties paid to the LWDA in the amount of $3,000. Ellison Decl. ¶19. This constitutes a substantial recovery that easily falls within the range of reasonableness for settlement approval.

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Deaver v. Compass Bank*, No. 13–cv–00222–JSC, 2015 WL 4999953, at *9 (N.D. Cal. 2015). Here, the total potential damages unique to the California Class amount to approximately $530,000, inclusive of meal and rest period claims, Labor Code section 203 penalties but excluding PAGA penalties, attorney fees and interest. Ellison Decl. ¶ 40. The Settlement allocation of $78,440.00 to the Rule 23 California claims (California Class) is within the reasonable range, especially when considering the following:

*i. <u>The Cost, Risk, and Delay of Trial and Appeal [FRCP 23(e)(2)(C)(i)].</u>*

Several risk/cost/timing factors contributed to the above discounts. First, at the time of the settlement, Plaintiff valued the state law claims (without attorney's fees and interest or PAGA) at $530,000. Ellison Decl. ¶ 40.

The claim for waiting-time penalties comes with risk, especially since all three of the District Courts post-*Parker Drilling* have held that this claim is inapplicable on the OCS (*Jensen*, *Mauia*, *Newton* (on remand), *supra*). The Section 203 claim is also risky because it requires a showing of willfulness and whether this defense holds is unknown.

Also, it is not certain whether Plaintiff's remaining state law claims (meal and rest breaks) survive the *Parker Drilling* analysis. While Plaintiff believes that federal laws do not "address the relevant issues," only three courts have addressed the issue – arriving at diametrically opposed positions (the Central District ruling that meal and rest break claims do not apply in *Jensen, supra,* and *Newton, supra* (on remand), and the Northern District ruling that they do apply in *Maui, supra*). Plaintiff values the meal and rest period claims at approximately $394,000 (combined) (Ellison Decl. ¶ 41), but not knowing whether they even apply on the OCS warrants a significant discount.

The FLSA claim is not without risk, because although there are FLSA regulations indicating that the value of meals and lodging must be included in employees' regular rates of compensation, *see* 29 C.F.R. § 778.116, there is little case law authority construing those regulations. Moreover, there are no cases directly applying it in the same way Plaintiff contends, and the Court has not initially held that they would relate back.

Obtaining class certification of the collective also presents a risk. Secorp contends that class certification is not warranted, claiming that the workers on each platform were subject to different levels of control and different policies with respect to alarms, recreation, travel, working conditions, etc.

Finally, Plaintiff and Class Counsel recognize and acknowledge the expense and delay of the lengthy proceedings necessary to prosecute the action against Secorp through trial and appeals. Given the limited precedent governing some of the key legal issues in the case, and the novelty of the issues pending, Plaintiff recognizes that future appeals would be a virtual certainty in the action. Ellison Decl. ¶ 23.

The settlement was also based on Defendant's demonstration of lack of affordability of a substantial judgment. Secorp's financial statements provided to Plaintiffs' accountant, indicated a tenuous financial position, that could push Defendant into bankruptcy if any judgment substantially exceeding the settlement amount were awarded. *Id.* ¶ 38. Given these risks, a settlement of $200,000.00 (80% of which is allocated to the California class) for claims now valued at approximately $350,000 (without fees, interest or PAGA) is an excellent result.

ii. *The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims [FRCP 23(e)(2)(C)(ii)].*

Plaintiff incorporates by reference Section IV(A-J), above, and V(D), below.

iii. *The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment [FRCP 23(e)(2)(C)(iii)].*

With respect to the first *Vizcaino* factor, Class Counsel achieved an excellent result in this case. "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Ominivision Techs*, 559 F. Supp. 2d at 1046; *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

The Settlement provides for an award of attorneys' fees not to exceed 35% of the Gross Settlement Value (or $70,000.00) and up to $10,000 in costs. Settlement Agreement ¶ 20. Plaintiff seeks approval of 35% in fees (or $70,000.00). This amount is fair and reasonable, especially considering that this case been actively litigated for several years, and has involved appellate work.

The Ninth Circuit has repeatedly held that 25 percent of the gross settlement amount is only the benchmark for attorneys' fees awarded under the percentage method, with 20 to 30 percent as the usual range in common fund cases of $50-200 million. *Vizcaino*, 290 F.3d at 1047. Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small. *See Newberg on Class Actions*, § 14:6 (4th ed. 2002). Small cases tend to have fees above the 25% benchmark in California. *Craft*, 624 F.Supp.2d at 1127 (holding that attorneys' fees for mega fund cases are typically under the 25% benchmark and cases below $10 million are often more than the 25% benchmark); *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, *at* *15 (E.D. Cal. Nov. 27, 2012) ("[I]n most common fund cases, the award exceeds the benchmark percentage."). California district courts usually award attorneys' fees in the range of 30-40% in wage and hour class actions that result in the recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent wage

and hour cases where federal judges approved fee awards ranging from 30% to 35% and approving percentage of the fund award of 33% to class counsel).

Given the circumstances of the settlement, the benefit obtained for the class, and Secorp's non-opposition, the attorneys' fees sought are reasonable. This case, settling below $10 million, which would warrant a higher percentage than the 25% benchmark, especially after *Parker Drilling*. Regardless, Plaintiff's counsel only seeks 35%.

*iv. Any Agreement Required to be Identified Under Rule 23(e)(23) [FRCP 23(e)(2)(C)(iv)].*

Other than the Settlement, there are no other agreements herein.

**4. The Settlement Treats Class Members Equitably Relative to Each Other [FRCP 23(e)(2)(D)].**

The Settlement does not unfairly grant preferential treatment to any Class Member. The parties have also carefully constructed a formula for payments to Settlement Class members to ensure an equitable distribution of the settlement funds based on the proportionate number of shifts worked by each California Class and/or Collective Members during the applicable periods. Settlement Agreement ¶ 71(b). The Settlement Agreement provides additional proportional compensation to subclasses of Claimants who may qualify for additional penalties under California Labor Codes 203, 226, and PAGA. Settlement Agreement ¶ 45.

Moreover, the proposed enhancement for Plaintiffs Jensen and Beatty of $6,000.00, and $4,000.00 respectively is in line with awards in other wage-and-hour cases in California district courts. *See Thomas v. TD Ameritrade, Inc.*, No. C08-02397 WDB, 2009 WL 8730175, at *2 (N.D. Cal. Sept. 29, 2009) ($15,000 awarded); *Espinoza v. Domino's Pizza, LLC*, 2012 WL 5462550, at *4 (C.D. Cal. Nov. 7, 2012) ($10,000 service awards were reasonable); *Ingalls v. Hallmark Retail, Inc.*, 2009 WL 10674054, at *1 (C.D. Cal. Oct. 16, 2009) (same); *Ladore v. Ecolab, Inc.*, No. CV 11-9386 FMO (JCX), 2013 WL 122463399, *8 (C.D. Cal. Nov. 12, 2013)(approving service awards of $25,000 and $15,000 for named plaintiffs). Moreover, the requested Service Award represents only 5% of the total settlement amount of $200,000. Finally, Jensen has been an active representative for longer than Beatty, and has even had his

deposition taken, which explains why he is receiving slightly more in incentive pay. Both Plaintiffs have been actively involved in assisting counsel with the litigation through responding to discovery, contacting other class members, identifying issues underlying each claim, regularly communicating with counsel, routinely reviewing documents, and attending the Ninth Circuit Mediation telephonically.

**5. The FLSA Settlement and Release Is Fair and Reasonable**

"Because the Ninth Circuit has not established a standard for district courts to follow when evaluating an FLSA settlement, California district courts frequently apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982*).*" *Ferreri v. Bask Technology, Inc*., 2016 WL 6833927, at *3–4 (S.D. Cal., Nov. 21, 2016) (citing *Dunn v. Teachers Ins. & Annuity Ass'n of Am*., 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). "Under that standard, the relevant considerations are whether the named plaintiff is 'similarly situated'[4] to the collective members and whether the settlement constitutes 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id*.; see also *Lynn's Food Stores*, 679 F.2d at 1354; *Yue Zhou v. Wang's Restaurant*, 2007 WL 2298046, *1 (N.D. Cal. Aug. 8, 2007) (A district court presented with a proposed settlement of FLSA claims "must determine whether the settlement is a fair and reasonable resolution of a bona fide dispute.... 'If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] ... the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation."). The district court's "[o]bligation is not to act as caretaker but as gatekeeper," so that FLSA "settlements do not undermine the Act's purposes." *Goodwin v. Citywide Home Loans, Inc*., 2015 WL 12868143, at *2 (C.D. Cal. Nov. 2, 2015). Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging

[4] In the settlement context it is clear that the defendant will not seek decertification of the conditionally certified collective so courts need not consider the second step in the FLSA certification process. *Millan v. Cascade Water Services, Inc*., 310 F.R.D. 593, 607 (E.D. Cal. 2015).

settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

As discussed above, the parties have a bona fide dispute regarding applicability of the value of meals and lodging, and the settlement represents a reasonable compromise of those claims. Indeed, the above showing that supported preliminary approval of the California Class settlement establishes that the FLSA settlement should also be approved. *Millan v. Cascade Water Services, Inc*., 2016 WL 3077710, at *3 (E.D. Cal. Nov. 21, 2016) ("many courts begin with the well-established criteria for assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context."); *Otey v. Crowdflower, Inc*., 2014 WL 1477630, at *11 (N.D. Cal. Apr. 15, 2014) ("[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a Rule 23 settlement."). This is especially true because courts have a "considerably less stringent" obligation to ensure fairness of a FLSA collective settlement than a California Class because parties who do not opt in are not bound by the settlement. *Millan v. Cascade Water Services, Inc*., 310 F.R.D. at 607.

### D. The Proposed California Class Notice and FLSA Collective Action Notice Should Be Approved

Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing. Newberg on Class Actions, § 8.32, at 262-68. The notice must also indicate an opportunity to opt out, that the judgment will bind all Settlement Class members who do not opt out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P. 23(c)(2).

Here, the California Class Notice (Settlement Agreement, Ex. 2) meets all of the requirements of Rule 23(e): it identifies the Plaintiff and Secorp and describes the lawsuit and

the California Class in a straightforward manner; succinctly describes the essential terms of the proposed settlement, and identifies all parties against whom claims are being released; provides California Class Members with information on how to opt-out of the Class or to object to the settlement and provides all applicable deadlines for such action; and informs Settlement Class members that if they do not exclude themselves from the California, and the Settlement is approved, they will be bound by the resulting judgment and release. In addition, the California Class Notice instructs California Class Members to contact Class Counsel or the Settlement Administrator to obtain more detailed information and provides information regarding counsel's fee and expense application. *Id.* Thus, the California Class Notice will provide the necessary information for Settlement Class members to make an informed decision.

Moreover, the proposed method for giving notice satisfied due process concerns. Generally, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 177 (1974). As courts have repeatedly held, notice by direct mail or e-mail and publication are often the "best practicable" notice under the circumstances. *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

The parties agreed to a FLSA Collective notice process – comprised of a notice and forms in the FLSA Notice Packer – designed to allow Collective Members the opportunity to affirmatively opt-in before checks are distributed or rights released. (The Settlement Agreement attaches the proposed FLSA Collective Action Notice as Exhibit 5.) The FLSA Collective Form and Opt-In Form (Exhibits 4, 6) should be approved because they accurate and informative, contains all of the information required to enable Collective Members to affirmatively consent to become a party plaintiff to the FLSA action. The Settlement Administrator will make substantial follow-up efforts (*i.e.*, telephone call and email campaign, in addition to mailing the FLSA Notice Packets) to ensure that Collective Members will have ample opportunity to participate. Settlement Agreement ¶ 70-72.

### E. The Court Should Appoint Phoenix Settlement Administrators as Settlement Administrator

The parties propose that Phoenix Settlement Administrators administer the Settlement. Phoenix Settlement Administrators has served as a qualified and experienced Settlement Administrator and has provided a declaration averring to their past performance and ability to continue to perform professionally and efficiently. Ellison Decl. ¶ 36.

### F. Proposed Schedule for Remaining Procedures

Plaintiff proposes the following schedule for final approval assuming preliminary approval is granted on December 7, 2020:

| PRELIMINARY APPROVAL HEARING | December 7, 2020 |
|---|---|
| Secorp to provide California Class and Collective Members contact information to Phoenix Settlement Administrators (14 calendar days from entry of preliminary order) – Settlement Agreement at ¶ 80 | |
| Phoenix Settlement Administrators to mail Notice Packets (20 calendar days from entry of preliminary order) – Settlement Agreement at ¶ 81) | |
| California members to possibly opt-out/Collective Members to opt-in (45 calendar days from mailing) – Settlement Agreement at ¶ 47 | |
| California Class and Collective Members to submit objections, if any (45 calendar days from mailing) – Settlement Agreement ¶ 48) | |
| Motion for final approval and attorney fees/costs due (proposed as 40 days in advance of hearing to give objectors time to review the motion as well) | |
| FINAL APPROVAL HEARING | November 9, 2020 |

## VI. DENYING THIS MOTION WOULD INVARIABLY HARM THE CALIFORNIA CLASS AND COLELECTIVE MEMBERS.

Should this Court deny approval of the settlement, it could, effectively, result in no settlement at all, especially since *Newton* was reversed by *Parker Drilling*. This is would be an inequitable result, especially considering the average anticipated payout.

## VII. CONCLUSION

For the reasons stated above, Plaintiff, on behalf of himself and the putative California Class and Collective Members, respectfully requests the Court to grant this motion for preliminary approval of class action settlement.

Dated: November 4, 2020

**STRAUSS AND STRAUSS, APC**

By: */s/ Andrew C. Ellison*

Andrew C. Ellison
*Attorneys for Plaintiff and the Putative Class*