Michael A. Strauss (State Bar No. 246718)
mike@strausslawyers.com
Andrew C. Ellison (State Bar No. 283884)
andrew@strausslawyers.com
Aris E. Karakalos (State Bar No. 240802)
aris@strausslawyers.com
STRAUSS AND STRAUSS, APC
226 W. Ojai Ave. #101-325
Ojai, California  93023
Telephone: (805) 641.6600
Facsimile: (805) 641.6601
*Attorneys for Plaintiff And others similarly situated*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE JENSEN, an individual; CHRISTOPHER BEATTY, an individual; for themselves and those similarly situated, <br><br>        Plaintiff, <br><br> vs. <br><br> SECORP INDUSTRIES, a Louisiana partnership; and DOES  1 through 100, inclusive, <br><br>        Defendants. | **Case No2:19-cv-07980-MWF-(SKx)** <br><br> ***Hon. R. Gary Klausner*** <br><br> **CLASS ACTION** <br><br> **PLAINTIFFS' *UNOPPOSED* NOTICE OF MOTION AND MOTION FOR UNOPPOSED FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, AND SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** <br><br> ***[Filed concurrently with Declarations and the (Proposed) Order Granting Final Approval and Judgment]*** <br><br> **Date:   May 24, 2021** <br> **Time:  9:00 a.m.** <br> **Place:  Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, Courtroom 850, 8th Floor** |

**UNOPPOSED MOTION FOR FINAL APPROVAL OF STIPULATION OF CLASS ACTION CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND SERVICE AWARD**

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 24, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable R. Gary Klausner, at the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, Courtroom 850, 8th Floor, Plaintiffs Kyle Jensen and Christopher Beatty ("Plaintiff") on their own behalf and on behalf of the Certified Class herein, will and hereby do move for final approval of a class-wide settlement reached herein, providing for:

    a.  Maximum Settlement Amount of $200,000.00;

    b.  Class Counsel Fees of $70,000.00 (35%);

    c.  Class Counsel Costs of $8,240;

    d.  Service Awards to Plaintiff Kyle Jensen of $6,000, and Christopher Beatty of $4,000.00 and

    e.  Administrative Costs to Phoenix Settlement Administrators of $7,950.00.

Preliminary approval of the Settlement was granted on January 29, 2021. [CM/ECF Docket No. 44]. This motion is unopposed.

This Motion is based on this Notice of Motions and Motion; the Memorandum of Points and Authorities; the Declarations of Andrew C. Ellison, Michael A. Strauss, Aris E. Karakalos, and Phoenix Administrator Elizabeth Kruckenberg, filed concurrently herewith, all supporting exhibits filed herewith, all other pleadings and papers filed in this action, and any argument or evidence presented at the hearing in this matter.

Although it is believed to be unnecessary in this context, the parties have nevertheless met and conferred prior to the filing of this motion in accordance with Central District Local Rule 7-3. This motion and all accompanying pleadings have been reviewed and it is unopposed by Defendant Secorp Industries.

Dated: April 14, 2021       **STRAUSS AND STRAUSS, APC**

                       By: _/s/_____

                       Andrew C. Ellison

                       *Attorneys for Plaintiff and the Certified Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION AND FACTUAL SUMMARY.........................................1

II.   ADMINISTRATION OF CLAIMS AND NOTICE FOLLOWING
PRELIMINARY APPROVAL. ..............................................................3

III.  LEGAL STANDARD REGARDING FINAL APPROVAL ...................5

IV.   ANALYSIS OF FACTORS OF FINAL APPROVAL ........................6

  A.  Continued Certification of the Class for Settlement Purposes .............6

  B.  Adequacy of Notice to Class Members ................................................6

  C.  Fairness of the Settlement ...................................................................7

    1.  Presumption of Fairness ................................................................7

    2.  Strength of Plaintiff's Case ...........................................................8

    3.  Risk, Expense, Complexity, and Likely Duration of Further Litigation............8

    4.  The Risk of Maintaining Class Action Status Throughout Trial .......................8

    5.  The Amount or Type of Relief Offered in Settlement ...................................9

    6.  The Extent of Discovery Completed and the Stage of the Proceedings ...........9

    7.  The Experience and Views of Counsel ...........................................10

    8.  The Reaction of Class Members to the Proposed Settlement .........................10

    9.  Objections and Opt-Outs ...............................................................10

    10. Attorney's Fees Sought ..................................................................11

    11. Other Considerations under FRCP 23(e)(2) ....................................11

V.    ATTORNEY'S FEES AND COSTS .................................................11

  A.  Introduction.......................................................................................11

    1.  Methods of Assessing Reasonableness of Fees.............................12

  B.  The Requested Fee Award is Fair and Reasonable. ............................14

i

1.    Class Counsel Achieved Excellent Results. ........................................................14

2.    Counsel Litigated on a Contingency Basis and Faced Considerable Risk. ......14

3.    The Skill and Quality of the Work Merits the Requested Fee Award. .............15

4.    An Award of 35% of the Common Fund to Compensate Class Counsel is
Reasonable in Comparison to Awards in Similar Cases. .........................................16

C.    Unusual Circumstances Warrant a Departure from the Benchmark. ...................17

D.    If Lodestar Cross-Check Is Employed, It Validates the Reasonableness
of the Fee Award. ..............................................................................................................18

1.    The Number of Hours Expended and Hourly Rates are Reasonable. ..............19

2.    Class Counsel's rates are reasonable. ....................................................................20

3.    The Lodestar Cross-Check Supports a Finding of Reasonableness Because The
Multiplier is Less than One. .............................................................................................21

VI.    REQUESTS FOR COST REIMBURSEMENT ...................................................22

VII.    REQUEST FOR SERVICE AWARD ....................................................................22

VIII.  PAGA NOTICE COMPLIANCE ...........................................................................23

IX.    CONCLUSION .........................................................................................................24

# **TABLE OF AUTHORITIES**

**CASES**

*Barbosa v. Cargill Meat Solutions Corp.*,
 297 F.R.D. 431 (E.D. Cal. 2013) ...................................................14, 21

*Berry v. DCOR, LLC*,
 No 2:15-cv-02792-RGK-AJW (C.D. Cal. Jan. 19, 2016) ...........................14, 16

*Blum v. Stenson,*
 465 U.S. 886 (1984) ...................................................10, 18

*Churchill Vill., L.L.C. v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) ...........................................5, 9

*Cicero v. DirecTV, Inc.,*
 2010 WL 2991486 (C.D. Cal. July 27, 2010).............................11, 15

*Craft v. Cty. of San Bernardino*,
 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................11, 17

*Cwik v. Harvest Management Sub LLC*
 No. 2:12-cv-08309-DMG-JC (C.D. Cal.) ................................15, 19

*Doty v. Costco Wholesale Corp.,*
 No. 05-3241 (C.D. Cal. May 14, 2007) ...................................19

*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*),
 213 F.3d 454 (9th Cir.2000) ............................................7

*Espinoza v. Domino's Pizza, LLC*,
 2012 WL 5462550 (C.D. Cal. Nov. 7, 2012)..............................22

*Fischel v. Equitable Life Assurance Society of the United States*,
 307 F.3d at 1001 (9th Cir. 2002) .......................................11

*Florida v. Dunne*,
 915 F.2d 542 (9th Cir. 1990). ..........................................11, 18

*Franco v. Ruiz Food Products, Inc.,*

      2012 WL 5941801 (E.D. Cal. Nov. 27, 2012)..................................................12, 13

*Glass v. UBS Fin. Serv., Inc.,*

      331 F. App'x. 452 (9th Cir. 2009) .......................................................................17

*Glass v. UBS Fin. Servs., Inc.,*

      No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)....................16

*Hanlon v. Chrysler Corp.,*

      150 F.3d 1011 (9th Cir. 1998) ....................................................................4, 5, 18

*Hensley v. Eckerhart,*

      461 U.S. 424 (1983)...............................................................................12, 18

*In re Consumer Privacy Cases,*

      175 Cal. App. 4th 545 (2009) ..............................................................................11

*In re Equity Funding Corp. Sec. Litigation,*

      438 F. Supp. 1303 (C.D. Cal. 1977) ...................................................................14

*In re Heritage Bond Litigation,*

      2005 WL 1594403 (C.D. Cal. 2005) ...................................................................13

*In re IDB Communications Group, Inc. Sec. Litig.,*

      No. CV-94-3618-RG (JGX) (C.D. Cal. Jan. 17, 1997) .......................................19

*In re Pacific Enterprises Sec. Litig.,*

      47 F.3d 373 (9th Cir. 1995) ..................................................................................6

*In re the PMI Group, Inc. Securities Litig.,*

      No. 08-1405 SI (N.D. Cal. Dec. 16, 2010)..........................................................19

*Ingalls v. Hallmark Retail, Inc.,*

      2009 WL 10674054 (C.D. Cal. Oct. 16, 2009).....................................................22

*Kerr v. Screen Extras Guild, Inc.,*

      526 F.2d 67 (9th Cir. 1975) .................................................................................18

1  *Knisley v. Network Assocs.*,

2       312 F.3d 1123 (9th Cir. 2002) ............................................................10

3  *Ladore v. Ecolab, Inc.*,

4       No. CV 11-9386 FMO, 2013 WL 12246339 (C.D. Cal. Nov. 12, 2013).......11, 22

5  *Linney v. Cellular Alaska P'ship*,

6       151 F.3d 1234 (9th Cir. 1998) ..............................................................9

7  *In re Omnivision Techs., Inc.*,

8       No. C-04-2297 SC, 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007) ......................10

9  *Monterrubio v. Best Buy Stores, L.P.*,

10      291 F.R.D. 443, 455 (E.D. Cal. 2013) ....................................................10

11 *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,

12      221 F.R.D. 523 (C.D. Cal. 2004)............................................................8

13 *Newton v. Parker Drilling Mgmt. Servs., Ltd.*,

14      881 F.3d 1078 (9th Cir. 2018) ..............................................................1

15 *Officers for Justice v. Civil Serv. Comm'n*,

16      688 F.2d 615 (9th Cir. 1982) ................................................................5

17 *Parker Drilling Management Services, Ltd. v. Newton*,

18      139 S.Ct. 1881 (2019) ........................................................................1

19 *Rodriguez v. West Publishing Corp.*,

20      563 F.3d 948 (9th Cir. 2009). ..........................................................6, 21

21 *Romero v. Producers Dairy Foods, Inc.*,

22       2007 WL 3492841 (E.D. Cal. 2007)......................................................15

23 *Singer v. Becton Dickinson and Co.*,

24      2010 WL 2196104 (S.D. Cal. 2010).......................................................15

25 *Smith v. Cty. of Riverside*,

26      No. EDCV 16-227 JGB (KKx), 2019 WL 4187381 (C.D. Cal. June 17, 2019)..19

27

28

**UNOPPOSED MOTION FOR FINAL APPROVAL OF STIPULATION OF CLASS ACTION CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND SERVICE AWARD**

*Staton v. Boeing*,

    327 F.3d 938 (9th Cir. 2003) ..............................................................4, 10, 21

*Steiner v. Am. Broad. Co.*,

    248 Fed. App'x. 780, 783 (9th Cir. 2007).......................................... 19, 20

*Teeter v. NCR Corp.*,

    No. 08-297 (C.D. Cal. Aug. 6, 2009)..................................................... 19

*The Music Force, LLC v. Viacom, Inc.*,

    No. 04-8239 (C.D. Cal. Aug. 8, 2007)................................................... 19

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) .......................................................... 15


**STATUTES**

Cal. Labor Code Section 2699 ........................................................................2


**RULES**

Federal Rule of Civil Procedure, Rule 23 ........................................................1


**TREATISES**

*Newberg on Class Actions*, § 14:6 (2002).....................................................12

*Newberg on Class Actions, Attorney Fee Awards,* § 14.03 (1987) ................19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND FACTUAL SUMMARY

Pursuant to Federal Rule of Civil Procedure 23, and FLSA Plaintiffs Kyle Jensen and Christopher Beatty ("Plaintiffs") move this Court for an order finally approving the Stipulation of Settlement Regarding Putative Class Action Settlement of *Kyle Jensen v. Secorp Industries* (hereinafter sometimes referred to as the "Final Settlement Agreement" or "Settlement Agreement") entered by Plaintiffs and Defendant Secorp Industries. ("Secorp"). (CM/ECF Docket ("Dkt.") No. 38-1, Ex. A.) This Court preliminarily approved the Settlement Agreement on January 29, 2021. (Dkt. No. 44.) For the sake of brevity, Plaintiffs hereby incorporate by reference the factual and procedural statements included in Plaintiffs' Unopposed Motion For Preliminary Approval. (Dkt. No. 38, Sections III-IV, pp. 2-11.)

The Settlement establishes a gross settlement amount of $200,00 available to resolve the claims of 63 putative class members, consisting of 19 individuals who only qualified to make FLSA claims, which they must opt-in to receive, 12 individuals with California specific claims, and 32 individuals with both FLSA and California claims, who were notified that they must opt-in to receive the FLSA portion of the settlement. 80% of the settlement is allocated to the California claims, and 20% is allocated to the FLSA claims. If FLSA claims are not initially claimed by opt-ins, the FLSA allocated funds will be redistributed to FLSA members who have opted-in.

Although the Court indicated in its order granting preliminary approval that it would grant fees "in accordance with the Ninth Circuit's 25% benchmark" the same order stated that fees are determined during final approval ("ultimate approval of a fee award is reserved for a later stage in the proceedings") [Dkt. 41, at 10]. For reasons explained herein, special circumstances warrant a departure from the 25% benchmark. Thus, Class counsel is seeking 35% of the common fund, which is $70,000, and recoverable expenses of $8,240. Class representatives Jensen and Beatty seek enhancement awards of $6,000, and $4,000, respectively. Claims Administration costs have totaled $7,950.

1       After the Supreme Court's decision in *Parker Drilling Management Services, Ltd.*

2  *v. Newton*, 139 S.Ct. 1881 (2019) ("*Parker Drilling*") -- a factually and legally identical

3  case, some 85% of the value of Plaintiffs' claims, unpaid overtime, was no longer

4  recoverable (Ellison Decl., at ¶ 38.)  While *Parker Drilling* left unanswered the question

5  of whether Plaintiffs' remaining claims arising under California law (meal and rest

6  breaks, waiting-time penalties, unfair competition, paystubs, PAGA) could survive, these

7  issues were recently adversely decided by this District Court in two other factually

8  identical cases, and favorably decided by one District Judge in the Northern District.

9  (Ellison Decl., at ¶ 14.)  Each of these decisions is currently on appeal.  The recent oral

10  argument indicates that the Ninth Circuit Panel is not likely to find for the plaintiffs.

11  These post-settlement developments have potentially reduced the Settlement Class's

12  recoverable damages to *zero*.

13       Absent the Settlement, the class would potentially recover extraordinarily little or

14  nothing, but with the Settlement, the 44 California Rule 23 Class members will be paid

15  on average $1,834.87 and 51 FLSA collective members (most of whom are also Rule 23

16  Class members) secured an additional average recovery of $390.85. This is an excellent

17  result.

18       Not surprisingly, following the grant of preliminary approval on January 29, 2021,

19  the administration and notice process have resulted in an excellent participation rate in

20  the anticipated distribution, with no objections, no opt-outs received.

21       Considering the highly favorable monetary results obtained for each Class

22  Member, the fees and costs sought are reasonable and should be granted.  Class counsel

23  is requesting a 35% of the common fund.  This request matches the percentage awarded

24  in similar wage and hour class actions in this court and others in this District and beyond.

25  Class counsel has fought for the Class Members for over three years and secured them a

26  significant recovery, hence the 35% request for fees considering the lodestar cross check

27  should be deemed reasonable.

28  //

Finally, the Service Award sought by Plaintiffs Kyle Jensen and Christopher Beatty are commensurate with the level of his continued involvement and the added benefit their efforts have bestowed on the Settlement Class Members.

## II.    ADMINISTRATION OF CLAIMS AND NOTICE FOLLOWING PRELIMINARY APPROVAL

The Court appointed Phoenix Settlement Administrators ("Settlement Administrator" or "Phoenix") to administer the Settlement and perform the duties identified in the Settlement. (ECF No. 70).

On February 18, 2021, Phoenix received a data file from Defense Counsel that contained names, last known mailing addresses, Social Security numbers, and number work weeks for each Class Member during the relevant Class Periods. The final mailing list contained sixty-three (63) Class Members. (Kruckenberg Decl. at ¶ 4.)  There are a total of fifty-one (51) Class Members in the FLSA Class and forty-four (44) in the California Class.

On March 2, 2021, Phoenix conducted a National Change of Address (NCOA) search in an attempt to update the class list of addresses as accurately as possible. A search of this database provides updated addresses for any individual who has moved in the previous four (4) years and notified the U.S. Postal Service of their change of address. (Kruckenberg Decl. at ¶ 5.)  On March 2, 2021, PSA mailed the Notice Packet via U.S. first class mail, in English to all sixty-three (63) Class Members on the Class List. (*Id*. at 6.)  Settlement Administrator also sent an electronic copy of the Class Notice to those Settlement Class Members for whom the Settlement Administrator received an email address from Defendant. (*Id*.). The Class Notice to the FLSA Group Members included a form that the potential FLSA Group Members were required to timely submit with all requested information to affirmatively indicate their consent to participate in the Settlement and to be bound by the terms set forth herein. (*Id*.). The Class Notice to the California Class included a form that the California Class Members could use for the purpose of excluding themselves from the California Class, in addition to any other

3

writing that the California Class Members could use for that purpose. (*Id*.).

On March 2, 2021, Phoenix established a dedicated Settlement website, (http://www.phoenixclassaction.com/jensen-v-secorp/) to provide easy and immediate access to information regarding the Settlement. Court documents pertaining to this proposed Settlement—including the Settlement Agreement, Minute Order—are posted on the Settlement website. The signed Final Order and Judgment will also be posted to this dedicated website for Class Members to review. (*Id*. at 6.)

As of April 14, 2021, two (2) Notice Packets have been returned to PSA. None were returned with a forwarding address. For the two (2) Notice Packets returned from the Post Office without a forwarding address, Phoenix attempted to locate a current mailing address using TransUnion TL Oxp, one of the most comprehensive address databases available for skip tracing. Of the two (2) Notice Packets that were skip traced, two (2) updated addresses were obtained and the Notice Packet was promptly re-mailed to those Class Members via first class mail.

In addition to the Class Notice mailing, Phoenix is conducting an ongoing telephonic campaign for all FLSA Collective Members for whom Phoenix was able to locate a possible phone number, mailed reminder postcards to FLSA Collective Members, and engaged in a search for Class Members via social media websites to locate and communicate with FLSA Collective Members and inform them of the relevant deadlines associated with the Settlement. If FLSA Collective members indicate to Phoenix representatives that they would like an additional copy of the FLSA opt-in form, Phoenix verifies the email address and immediately emails the notice packet to the class member. (*Id*. at ¶10.)

The extensive efforts undertaken by Plaintiffs to ensure the notice to and participation of the FLSA Group Members through a mail, phone and email/social media campaign should prove successful by the response deadline, which is April 16, 2021 (still two days from now). The responses are still being tabulated, and will be finalized in a supplemental declaration when they are available. To date Phoenix has received 9 opt-

4

1  ins, though the final postmark date is still several days away (an updated declaration will
2  be submitted with final numbers soon after the opt-in deadline of April 16, 2021 has run).

3        The average response rate of other FLSA settlements approved by this Court or
4  this and other District Courts in California is low. See, e.g. *Khanna v. Intercon Security*
5  *Systems, Inc*., 2014 WL 1379861 at *9 (E.D. Cal. 2014) (approving settlement with a
6  30% response rate); *Four in One Co., Inc. v. S.K. Foods, L.P*., 2014 WL 4078232 at *6
7  (E.D. Cal. 2014) (approving settlement with a 27.5% response rate); *Rodriguez v. Danell*
8  *Custom Harvesting, LLC*, 327 F.R.D. 375 at 389 (E.D. Cal. 2018) (37% response rate
9  weighed in favor of approval); *Tarlecki v. bebe Stores, Inc*., 2009 WL 3720872 at *2
10 (N.D. Cal. 2009) (approving settlement with an 18% response rate, noting that transitory
11 nature of wage and hour settlement class can affect the response rate and make providing
12 notice difficult). To date, none of the FLSA Group Class Members objected to any aspect
13 of the Settlement.  (Kruckenberg Decl. at ¶ 14.)  None of the California Class Members
14 opted-out of the Settlement or objected to any aspect of the Settlement. (*Id*.at ¶¶ 11-12.)

15       According to Phoenix, for the FLSA Class the highest individual settlement
16 payment to be paid will be approximately $1,802.30 with the average individual
17 settlement payment to be paid being approximately $390.85. For the California Class the
18 highest individual settlement payment to be paid will be approximately $8,563.86, with
19 the average individual settlement payment to be paid being approximately $1,834.87.
20 Phoenix's costs in connection with the administration of this settlement are $7,950.00.
21 (*Id*. at ¶ 13.)  This is hardly a post-card settlement by any stretch of the imagination.

22 **III.   LEGAL STANDARD REGARDING FINAL APPROVAL**

23       To grant final approval, the court must find that the proposed settlement is fair,
24 adequate, and reasonable.  *See Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003)
25 (*citing Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998)).  In making this
26 determination, the court may consider any or all the following factors: (1) the strength of
27 plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation;
28 (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the Class Members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). This list is not exhaustive, and "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Under recent amendments to the Federal Rules of Civil Procedure, district courts must now also consider a list of factors delineated in Rule 23(e)(2), which are somewhat similar to the Ninth Circuit's longstanding factors and considerations. Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class actions. *See, e.g., Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d at 625. While balancing all these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026.

## IV. ANALYSIS OF FACTORS OF FINAL APPROVAL

### A. Continued Certification of the Class for Settlement Purposes

On January 29, 2021 the Court preliminarily certified the class, finding that the class definition met the Rule 23(b)(3) requirements for class certification. (Dkt. No. 44.) Nothing in the intervening period has suggested to the Court that the class should be decertified. Accordingly, the Court should continue to hold that class certification is appropriate for the purposes of finally approving the Settlement.

### B. Adequacy of Notice to Class Members

For a class judgment to bind an absent class member, Rule 23(e) requires that the absent Class Members receive adequate notice. *See Hanlon*, 150 F.3d at 1025. Here,

6

1    class notice was sent to Class Members' addresses on file with Secorp. (Kruckenberg

2    Decl., at ¶¶ 6-7.) As indicated above, extensive follow up via mail, email, and telephone

3    is being carried out to inform FLSA Collective Members of their right to opt-in to the

4    settlement. (*Id*.)

5        **C.   Fairness of the Settlement**

6            **1.   Presumption of Fairness**

7        Courts afford a presumption of fairness to a settlement, if: (1) the negotiations

8    occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the

9    settlement are experienced in similar litigation; and (4) only a small fraction of the class

10   objected. *See In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  The

11   Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive,

12   negotiated resolution[.]"  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th

13   Cir. 2009).

14       Plaintiffs, who were represented by experienced counsel, reached a settlement that

15   was negotiated at arms-length between the parties at multiple meetings and mediations.

16   (Ellison Decl., at ¶ 15.)  Additionally, the parties came to this settlement after conducting

17   formal and informal discovery on certain issues that revealed some of the strengths and

18   weaknesses of the case. (*Id*. at ¶17.)  There were no objections or opt-outs filed. Finally,

19   Secorp's counsel are highly respected, tenacious litigators who hedged their risks by

20   negotiating the Settlement Agreement.  (Michael Strauss Decl. ¶ 20.) All these factors

21   weigh in favor of affording a presumption of fairness of the Settlement.

22       While the FLSA Collective opt-in rates have yet to be finalized but are currently

23   near 20%, Courts have held that a low response rate is essentially neutral in evaluating

24   settlement fairness. See *Touhey v. United States*, 2011 WL 3179036 at *7–8 (C.D. Cal.

25   2011) (finding a 2 percent response rate did not render settlement unfair); *In re Packaged

26   Ice Antitrust Litig.*, 2011 WL 6209188 at *14 (E.D. Mich. 2011) (finding settlement fair

27   even when only 1 percent responded to notices when that 1 percent represented 46 percent

28   of defendant's total sales). If response rates as low as 1% does not doom a proposed

7

settlement, then the substantial participation plaintiffs anticipate, should be construed as overwhelming support for a settlement.

The Settlement Class' strong approval of the Settlement supports final approval.

**2.  Strength of Plaintiffs' Case**

Given the decision in the U.S. Supreme Court in *Parker Drilling*, as well as subsequent District Court decisions impacting other class claims, it is undeniable that at the time of settlement, Class Members faced the significant risk of failing to obtain any relief if settlement was not reached, and the decision now final created weaknesses in Plaintiffs' case which afford a strong inference of fairness of the Settlement, and favor granting final approval.

**3.  Risk, Expense, Complexity, and Likely Duration of Further Litigation**

The expense and possible duration of the litigation should also be considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 458 (9th Cir. 2000). The present litigation is complex – the fact that the Supreme Court granted certiorari in an identical case is a good indication of as much. Given that there exist many clams and issues that were not decided by the Supreme Court, some of which are already again on appeal at the Ninth District, significant resources would be needed to litigate due to the complex nature of the case, and the possibility of pending appeals. The case, if not settled, would be costly and likely last many years into the future. Furthermore, Plaintiffs would have taken a risk in pursuing further litigation given the uncertainty of the law given the later-identified weaknesses of this case as identified above.

**4.  The Risk of Maintaining Class Action Status Throughout Trial**

The Court granted preliminary approval to the Settlement and certified the class for settlement purposes.  Plaintiffs achieved class certification in the initial case, and the FLSA Collective would have likely been certified as well.  This factor weighs in favor of final approval.

//

UNOPPOSED MOTION FOR FINAL APPROVAL OF STIPULATION OF CLASS ACTION CLASS ACTION SETTLEMENT,
ATTORNEYS' FEES AND SERVICE AWARD

### 5.  The Amount or Type of Relief Offered in Settlement

The Settlement includes only monetary compensation, but it is a sizeable amount per class member. (Ellison Decl. at ¶ 47.) This is especially true following the significant devaluation of the claims in this case post-settlement following the *Parker Drilling* ruling.  Moreover, this amount is non-reversionary. (*Id*. at ¶ 35.) Therefore, the amount of relief offered in the Settlement is significant, which weighs in favor of finding the settlement adequate.

### 6.  The Extent of Discovery Completed and the Stage of the Proceedings

The parties reached settlement after years of extensive discovery, review, and years of settlement negotiations.  Class Counsel carefully investigated the Settlement Class's claims and preformed extensive formal and informal discovery to substantiate and prove Plaintiffs' claims and maximize the potential for settlement of the claims.

Plaintiffs and Class Counsel conducted an extensive investigation in order to assess the strengths and weaknesses of their arguments. Class Counsel obtained and reviewed hundreds of pages of handbooks, personnel files, pay records, timecards, company policies, contracts, and other relevant documents.  (Ellison Decl. at ¶18.)  Class Counsel requested and received extensive raw data from Secorp including average rate of pay, number of putative class members, and scheduling.  (*Id*. at ¶ 42.)  Class Counsel also interviewed many Secorp employees and other witnesses who detailed their experience at Secorp and corroborated the named plaintiffs' claims. (*Id*. at ¶ 26.)  Class Counsel propounded written discovery requests and took the 30(b)(6) depositions of Secorp representatives regarding the allegations in the complaint.  (*Id*.)  On September 7, 2016, Class Counsel traveled to San Francisco and took the depositions of two separately designated witnesses -- specializing in operational issues, and human resources, policy practices and payroll. (*Id*.) Secorp formally produced thousands of pages of documents bearing on employment history including time records and payroll in response to Plaintiffs' Interrogatories, Requests for Admissions and Requests for Production, all of which were reviewed and considered by Class Counsel.  (*Id*.)

In sum, Class Counsel more than "did its homework" in assessing the value of this case.  Therefore, this factor weighs in favor of finding the settlement fair.

### 7.  The Experience and Views of Counsel

Class Counsel and Secorp have supported approval of the Settlement as fair and reasonable. The recommendation of counsel is entitled to "great weight," as counsel is best positioned to evaluate and produce a fair settlement. *National Rural Telecommunications Cooperative v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004).  In the absence of fraud or collusion of the parties, courts typically defer to the views of counsel. *Id.*  Here, the Settlement was the produce of an arms-length negotiation including one half day mediation and eventually culminating in a second full day mediation.  (Ellison Decl., at ¶ 14-15.) The experience of Class Counsel with respect to class-action wage and hour cases is vast.  (M. Strauss Decl. at ¶ 10-39; Karakalos Decl., at ¶¶ 12-16, Ellison Decl. at ¶ 51.)  Thus, this factor weighs in favor of final approval.

### 8.  The Reaction of Class Members to the Proposed Settlement

To date, no formal objections have been submitted, and no notices of intent to appear at the fairness hearing have been submitted. The number of opt-outs and objections is zero.  *Compare Churchill Village, LLC v. Gen. Elec*., 361 F.3d 566 (9th Cir. 2004) (affirming district court's conclusion that settlement was fair when Class Members filed 500 opt-outs and 45 objections out of approximately 90,000 notified Class Members).  This factor weighs in favor of final approval.

### 9.  Objections and Opt-Outs

Although a court must give objectors an opportunity to "air [their] objections" and provide a reasoned response, it generally need not make detailed findings of fact relating to the objections. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242-43 (9th Cir. 1998).  No objections or opt-outs were submitted.  This factor weighs in favor of final approval.

//

//

10

**10. Attorney's Fees Sought**

An attorney's fees request of 35% of the settlement fund is appropriate under the circumstances.  *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).  As set forth in Section V below, especially given extraordinary result achieved and the special circumstances under which the settlement was obtained by Class Counsel, the 35% of the common fund requested in fees ($70,000.00) is eminently reasonable under the circumstances.  This factor weighs in favor of final approval.

**11. Other Considerations under FRCP 23(e)(2)**

Considering all the above fairness factors and complete lack of objections from Class Members, the Settlement is fair and adequate. Moreover, the same arguments that were raised in Plaintiffs' Motion for Preliminary Approval with respect to the factors under Rule 23(e)(2) apply the same and incorporated herein by reference. [Dkt. No. 30; Sections V(C), pp. 19-23.]

**V.    ATTORNEY'S FEES AND COSTS**

**A.   Introduction**

This matter has been litigated for three years, including vigorous written and oral discovery, multiple appeals to the Ninth Circuit, and outcomes contingent on pending United States Supreme Court litigation. (Ellison decl. ¶¶ 14-17.)  The class was initially certified against considerable opposition.  An FLSA conditional certification motion was prepared. Multiple motions for judgment on the pleadings, and motions to dismiss were contested. [Jensen I, CM/ECF Docket No. 52; CM/ECF Docket No. 10].  After the United States Supreme Court ruling in *Parker Drilling*, which radically devalued the case, Class Counsel secured a $200,000.00 settlement on behalf of 63 Class Members, yielding an average net recovery of more than $2,200.00 per Class Member.  Class Counsel seek a fee award of $70,000.00 representing award of 35 percent of the settlement fund, which represents a 75% reduction of Class Counsel's lodestar based on the firm's hourly rates that have been previously approved in the Central District.  While this fee request exceeds the Ninth  Circuit's  standard  25%  contingency  recovery  for  fee  awards  in  such

11

circumstances, a benchmark is not a requirement, and courts frequently award fees greater than this amount. *See, e.g., ln re Omni vision Techs., Inc.,* No. C-04-2297 SC, 2007 WL 4293467, at *10 (N.D. Cal. Dec. 6, 2007).

The requested award is reasonable under the common fund doctrine. *See Blum v. Stenson,* 465 U.S. 886,900, fn. 16 (1984). Class Counsel have obtained an excellent result for the 63 Class Members, which is reflected by the fact that no Class Member has objected to any aspect of the settlement. (Kruckenberg Decl. ¶¶ 9-12.) Moreover, the results achieved were after an extremely hard litigation battle – a battle wherein Plaintiffs' counsel successfully managed to certify a class of just over 30 workers while fighting on more than one front to keep the pending wage-and-hour claims alive on the OCS.

### 1.    Methods of Assessing Reasonableness of Fees

The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. *Fischel v. Equitable Life Assurance Soc'y of U.S.,* 307 F.3d 997, 1006 (9th Cir. 2002). The Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *McGrath v. Cnty. of Nev.,* 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984). Next, the Court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation. *Caudle v. Bristow Optical Co., Inc.,* 224 F.3d 1014, 1028-29 (9th Cir. 2000).

Pursuant to Rule 23(h), the Court may award reasonable attorneys' fees and nontaxable costs "authorized by law or by agreement of the parties...."  If a negotiated class action settlement includes an award of attorney's fees, that fee award must be evaluated in the overall context of the settlement.  *Knisley v. Network Assocs.,* 312 F.3d

1123, 1126 (9th Cir. 2002). A district court must therefore "carefully assess the
reasonableness of a fee amount spelled out in a class action settlement agreement."
*Staton v. Boeing*, 327 F.3d 939, 963 (9th Cir. 2003).

The trial court may compare the lodestar and the 25% benchmark to determine if
the 25% benchmark results in an inappropriately high or low fee. *See Vizcaino*, 290 F.3d
at 1050-51; *Fischel v. Equitable Life Assurance Society of the United States*, 307 F.3d
1001, 1007 (9th Cir. 2002) (finding no error where district court awarded fees under
lodestar method and did not compare lodestar with 25% benchmark); *Craft v. Cty. of San
Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008).

The Ninth Circuit has repeatedly held that 25 percent of the gross settlement
amount is only the benchmark for attorneys' fees awarded under the percentage method.
The *Vizcaino* court also recognized the so-called "increase-decrease rule"; that is, the
percentage of an award generally decreases as the common fund increases, and vice versa.
*Id.* at 1047. California district courts usually award attorneys' fees in the range of 30-
40% in wage and hour class actions that result in the recovery of a common fund under
$10 million. *See Cicero v. DirecTV, Inc.,* 2010 WL 2991486, at *6 (C.D. Cal. July 27,
2010) (citing three cases awarding fees in this range after surveying other California fee
awards in wage-and-hour class actions).

In general, smaller cases tend to have fees above the 25% benchmark in California.
*Craft*, 624 F.Supp.2d at 1127 (holding that attorneys' fees for mega fund cases are
typically under the 25% benchmark and cases below $10 million are often more than the
25% benchmark); *Franco v. Ruiz Food Products, Inc.,* 2012 WL 5941801, *at* *15 (E.D.
Cal. Nov. 27, 2012) ("[I]n most common fund cases, the award exceeds the benchmark
percentage.").  Other case law surveys suggest that 30-50% is commonly being awarded
in cases in which the common fund is relatively small. *See Newberg on Class Actions*, §
14:6 (4th ed. 2002).

//

//

13

**B.    The Requested Fee Award is Fair and Reasonable.**

Given the excellent results achieved by this settlement, Class Counsel request fees in the amount of 35% of the gross settlement.  Such a request is fair and reasonable under the factors used by the Ninth Circuit to evaluate a class action fee award: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden by the plaintiff; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1047.

**1.   Class Counsel Achieved Excellent Results.**

With respect to the first *Vizcaino* factor, Class Counsel achieved an excellent result in this case, a fact confirmed by the amount of participation of class members in the settlement.  "**The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award**." *In re Ominivision Techs*, 559 F. Supp. 2d at 1046; *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983).

An average net per-class member payment of over $2,200.00 is objectively impressive by itself, but it is even more extraordinary given the consequences of *Parker Drilling*, which reduced the potential recovery over 80%, and other District Court decisions which may have reduced it presently to zero.  Where the Class Members might otherwise likely not receive anything, they are now expecting to receive, on average, a net recovery of $2,200.00 *each*. (adding together California and FLSA claims).  The substantial monetary relief that Class Counsel achieved on behalf of the Settlement Class supports the requested fee award.

**2.   Counsel Litigated on a Contingency Basis and Faced Considerable Risk.**

The second and fifth *Vizcaino* factors, the risk of litigation and the contingent nature of the fee, also favor the requested fee award.  As in many putative class actions, there was the inherent risk the Court would not certify all the claims, or that Plaintiffs would lose at summary judgment or trial.

However, here, the risks were even more extraordinary – indeed, Plaintiffs initiated this action before a definitive determination whether California law applied to the OCS

14

as surrogate federal law under OCSLA – indeed, at the time of filing, at least four other cases pending in this Court had all found that California labor law did not apply to the OCS under OCSLA. (Ellison Decl., at ¶¶ 13-14.) This risk was clearly demonstrated when Plaintiffs' most valuable claims and over 80% of the potential damages for the Settlement Class was wiped away by the decision in *Parker Drilling*. (*Id*. at 16.)

In addition, Class Counsel litigated the case on a contingency fee basis, which "necessarily presented considerable risk." *Franco*, 2012 WL 5941801, at *16. (Strauss Decl., at ¶ 28.) Class Counsel spent hundreds of hours analyzing documents, communicating with class members, engaging in discovery, and advancing plaintiffs' claims. Class Counsel performed this work without any guarantee of payment. Moreover, Class Counsel risked losing significant costs incurred to date, which would have increased substantially by the time of trial. (*Id*.) "Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litigation,* 2005 WL 1594403, at *4 (C.D. Cal. 2005). Here, Class Counsel's pursuit of Plaintiffs' case on a contingency fee basis, with the accompanying risk of foregoing any compensation in the event of a judgment in favor of Defendant, supports an award of 35% of the common fund in attorneys' fees.

### 3. The Skill and Quality of the Work Merits the Requested Fee Award.

The third and fourth *Vizcaino* factors examine the experience and ability of class counsel, and the quality of class counsel's work.

Class Counsel performed high quality work in this case, efficiently and effectively pursuing the litigation. For example, this case settled only after Class Counsel exchanged initial disclosures, propounded discovery and responded to discovery, took and defended depositions, certified the class, litigated relevant issues to the Supreme Court in *Parker Drilling*, took up a second Ninth Circuit appeal, negotiated all the while, and resolved the case at a ***second*** mediation. Again, this shows just how hard Class Counsel pushed for meaningful payouts to the class members.

Class Counsel effectively pursued investigation of the facts in the case. This preparation was crucial to the excellent settlement results achieved, and further demonstrates that the requested fees are appropriate. *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (recognizing counsel's active pursuit of the litigation and the extensive discovery conducted in awarding 33% of the settlement fund in fees was within typical range in circuit of between 20 to 33.3 percent of total settlement, results achieved were good, case did not lend itself to easy proof of liability or damages, case required special skills to litigate legal theories relating to wage and hour law and labor law, counsel litigated case on contingency basis, which presented considerable risk, and amount was consistent with lodestar cross-check calculations. Fed. Rules Civ. Proc. Rule 23(h), 28 U.S.C.A.; West's Ann. Cal. Bus. & Prof. Code § 17200; West's Ann. Cal. Labor Code §§ 201, 226.7, 510, 1174.)  This factor supports an award of the fees requested.

Further, Class Counsel has extensive experience in wage-and-hour class actions, as well as other types of complex civil litigation. Moreover, Class Counsel believe opposing counsel in this case and know them to be deeply knowledgeable about California employment law and class action law and procedure. (Strauss Decl., at ¶ 32.) Secorp is a sophisticated company that used extensive resources to defend itself against the claims in this case. *Cf. In re Equity Funding Corp. Sec. Litigation*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers and should be compensated accordingly.").

**4. An Award of 35% of the Common Fund to Compensate Class Counsel is Reasonable in Comparison to Awards in Similar Cases.**

The sixth and final *Vizcaino* factor – comparable awards in similar cases – also supports Class Counsel's request for thirty-five percent of the common fund.  As noted in section A, above, numerous courts have awarded class counsel more than 25% of the common fund in wage-and-hour class actions like this one. (*Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *5 (C.D. Cal. Oct. 24, 2017) ("the Court

16

concludes that the lack of significant objections to the requested fees justifies an award of one-third of the settlement fund."); *Barbosa*, 297 F.R.D. at 449 (awarding one-third of the settlement fund to class counsel 1.5 years after case was filed and before class certification); *Singer v. Becton Dickinson and Co.,* 2010 WL 2196104, at *9 (S.D. Cal June 1, 2010) (awarding one-third of the settlement fund in wage-and-hour class action where plaintiffs' counsel took on the case on a contingency basis and settlement negotiations were hard fought); *Romero v. Producers Dairy Foods, Inc.,* 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (awarding one-third of the settlement fund where plaintiffs' counsel's small firm devoted extensive resources to litigating the wage-and-hour class action). *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five recent wage and hour cases where federal judges approved fee awards ranging from 30% to 33% and approving percentage of the fund award of 33% to class counsel); *Cicero v. DirecTV, Inc.,* 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (citing three cases awarding fees in this range after surveying other California fee awards in wage-and-hour class actions). Given the history of district courts awarding 33% fees in wage and hour cases, and in many cases awarding much higher percentages, this factor supports an award of the fees requested.

**C.   Unusual Circumstances Warrant a Departure from the Benchmark.**

Plaintiffs acknowledge that "unusual circumstances" are required to justify a departure from the benchmark. (*Paul, Johnson, Alsto & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *accord In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) (holding there must be an "adequate explanation in the record of any 'special circumstances' justifying a departure")). Plaintiffs did not distinguish the unique elements of the case at the preliminary approval phase, because they were not germane to the primary purpose of that motion. However, if ever there was a matter involving unusual circumstances warranting departure from the 25% benchmark, this is such a case.

This case raised a nuanced and novel issue from the outset – whether the definition of "hours worked" as applied by California Supreme Court in *Mendiola v. CPS Sec. Sols.,*

17

*Inc.*, 60 Cal. 4th 833 (2015), applied to workers on federal oil platforms off the coast of California, in federal waters, who were required to remain on the premises overnight but were not compensated for all hours each day. The heretofore unexamined question of law split California District Courts, made law at the Ninth Circuit, and then was ultimate resolved by the United States Supreme Court.  This case was among the first to raise the issue, along with *Parker Drilling*. These hurdles created significant risk for Plaintiffs, who nevertheless proceeded, and, after three years of litigation involving rounds of written discovery, depositions, a contested class certification, preparation of a Motion For Conditional Certification of the FLSA Collective, multiple contested motions for Judgment on the Pleadings, two separate appeals to the Ninth Circuit, and was ultimately contingent on coordinated United States Supreme Court litigation, Class Counsel ultimately secured an average settlement payment of more than two thousand dollars for each claimant after the *Parker Drilling* decision rendered the case relatively valueless.

> **D.  If Lodestar Cross-Check Is Employed, It Validates the Reasonableness of the Fee Award.**

A crosscheck is a common method to validate the reasonableness of a percentage-of-the-fund fee award. *Vizcaino*, 290 F.3d at 1050.  In this matter, Class Counsel's labor on behalf of the Class if billed hourly would substantially exceed the 35% requested, and at an hourly lodestar of $286,185 to date, would exceed the entire gross settlement fund. While Class Counsel are not seeking an award of fees based upon the lodestar/multiplier approach, cross-checking the fees under this doctrine confirms the reasonableness of the percentage sought.  *Craft v. Co. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) (though not required, a court may consider the lodestar in evaluating a percentage award request). Under the lodestar method, a reasonable hourly rate "is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.* 523 F.3d 973, 979 (9th Cir. 2008). The lodestar cross-check requires "neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306 (3d Cir.

2005).  As explained in more detail below, Class Counsel's lodestar, unadjusted by a multiplier, is $286,185. (Strauss Decl. ¶ 41.)  This is a baseline lodestar cross-check figure, as it is based on the time Class Counsel have recorded in the litigation as of April 13, 2021.  Additional attorney hours and costs will be necessary over the next few months to ensure the proper administration and implementation of the Settlement.  *Id.*  The lodestar calculation strongly supports the requested fee award of 35 percent of the common fund.

The lodestar is calculated using "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). *See also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) (a lodestar figure "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment") (citing *Kerr).* The Ninth Circuit requires "only that fee awards in common fund cases be reasonable under the circumstances." *Dunne,* 915 F.2d at 545.

### 1.  The Number of Hours Expended and Hourly Rates are Reasonable.

Class Counsel spent a total of 550.4 hours litigating this case so far. (Strauss Decl., at ¶ 41; Ellison Decl. at ¶ 51; Karakalos Decl., at ¶ 17.) Multiplying these hours by Class Counsel's various hourly rates yields a raw lodestar of $286,185.00 (Strauss Decl. ¶ 41.) Class Counsel exercised sound billing discretion by reducing the billable hours incurred; Class Counsel also delegated many tasks to lower-billing paralegals and associate attorneys.  (Strauss Decl. at ¶ 42.)

Because this was a contingency fee case, Class Counsel had little incentive to spend unnecessary time on tasks to inflate their fees.  The hours Class Counsel spent litigating the case were limited to those necessary to pursue Plaintiffs' claims and to procure and effectuate a class settlement.   Class Counsel worked closely and in cooperation with one another to divide tasks, ensure efficient case management, and prevent duplication of efforts.  (Strauss Decl. at ¶ 42.)  This Court should find that the

19

hours expended on the litigation to be reasonable considering the complex legal issues involved, the hard-fought nature of the case (including efforts on appeal in the Ninth Circuit, as well as at the Supreme Court in the related case of *Parker Drilling*) which directly impacted this case, the amount of discovery conducted, the satisfaction of the class members with the result, and the volume of time and pay records and other documents that needed to be analyzed before reaching settlement. The hours invested on a case pending over 3 years bitterly contested at every turn and having gone up to the Ninth Circuit twice are more than reasonable. Accordingly, the hours expended were reasonably and necessarily incurred.

      **2.    Class Counsel's rates are reasonable.**

      Class Counsel (both Mr. Karakalos and Mr. Strauss) seek an hourly rate of $650, while Andrew Ellison seeks an hourly rate of $400. (M. Strauss Decl., at ¶ 41; Karakalos Decl. at ¶ 13; Ellison Decl. at ¶ 51.)   Mr. Ellison, who bills at the lowest rate, has worked the majority of the hours in this case. (Strauss Decl. at ¶ 41.)

      This Court has found that similar hourly rates were acceptable for other attorneys with similar resumes. *See Lawrence Weinstein v. Mortgage Contracting Service, LLC*, No. EDCV1402521JGBSPX, Docket No. 94 at *13 (C.D. Cal. Oct. 23, 2018) (awarding $625 rate for an attorney admitted in 2005, the same years as attorney Karakalos was admitted herein). Moreover, in February 2020, the Honorable George Wu of this Court expressly found Class Counsel's rates of $650 to be reasonable. (*Orozco v. Ardent Companies, Inc.*, Case No. 2:18-CV-02763-GW-SS (C.D. Cal. Feb. 3, 2020), Docket No. 77 at *10.)

      Plaintiffs' counsel, Aris Karakalos, has submitted declarations from two attorneys – Daniel Palay and Paul Huff – who regularly practice in the Central District. Both attest to the reasonableness of the $675 hourly rate for Mr. Karakalos (even higher than $650). See Karakalos Decl., Exhibit 1. Plaintiffs' counsel, Michael Strauss, has submitted declarations from four attorneys – Scott R. Ames, Alireza Alivandivafa, Jeffrey Rager, and Leonard A. Sansanowicz – who regularly practice in the Central District. Each of

them attests to the reasonableness of the $675 hourly rate for Mr. Strauss (even higher than $650). See M. Strauss Decl., <u>Exhibit 1</u>. Finally, Andrew Ellison, has submitted declaration from Maththew C. Helland and James R. Bryant who regularly practices in the Central District and attest to the reasonableness of the $400.00 hourly rate for Mr. Ellison. See Ellison Decl., <u>Exhibit 1</u>. Mr. Ellison has been awarded fees at a $400 hourly rate in a number of arbitrations in 2020. (Ellison Decl. ¶ 41.)

Counsel has also submitted evidence of the reasonableness of their rates in the form of a printout of the *Laffey* Matrix showing hourly rates in excess of those sought by Class Counsel herein. M. Strauss Decl., <u>Exhibit 3</u>. When analyzing the *Laffey* Matrix for an attorney practicing for as long as each counsel have, it suggests that their hourly rates are approximately $759 and $672 (without any multiplier for the Los Angeles market). These rates are significantly above the rates they are currently seeking. This Court has recognized the *Laffey* Matrix in weighing the reasonableness of rates. *See Smith v. Cty. of Riverside*, No. EDCV16227JGBKKX, 2019 WL 4187381, at *3 (C.D. Cal. June 17, 2019).

### 3. The Lodestar Cross-Check Supports a Finding of Reasonableness Because The Multiplier is Less than One.

Finally, this Court should find that the reasonableness of the fee award requested by Class Counsel is also supported by a lodestar crosscheck. Class Counsel spent a total of 550.6 hours litigating this case. (Strauss Decl. at ¶ 41.) A detailed record of Counsels' billings are submitted for this Court's review. (Strauss Decl., <u>Exhibit 4</u>.) Multiplying these hours by Counsel's hourly rates yields a lodestar of $286,185.00. *Id*. When compared to the $70,000.00 sought by counsel, that results in a lodestar multiplier that is lower than 1, or only **0.24**. (Strauss Decl., ¶ 43.) In other words, counsel are seeking 24% of the fees they would have received if they were paid on an hourly basis.

Overall, given the complexity of the issues herein, the risks involved at each stage of litigation (including Supreme Court's review and reversal of *Newton*), the volume of documents reviewed, the vigorous push for resolution after the Supreme Court ruling in

21

1     *Parker Drilling*, the fees requested are appropriate.  (*See Vizcaino*, 290 F.3d at 1051.)

## VI.    REQUESTS FOR COST REIMBURSEMENT

       The Settlement provides that class counsel may seek up to $10,000 from the common fund for reimbursement of litigation expenses. (Settlement, at ¶ 3(D)(4).)  In fact, Class Counsel seeks reimbursement of $8,240.00 in costs, about 20% less than estimated under the Settlement. (Strauss Decl. at ¶ 46.)  These costs include expenses for attorney service fees, court reporter fees, filing fees, postage and delivery fees, and other fees related to the litigation.  (*Id*.)  These costs are reasonable and should be fully paid from the common fund.

       Each of the above cost categories represents an integral component in the successful litigation herein, and courts routinely find that reimbursement for such costs reasonable and permissible. *See Barbosa,* 297 F.R.D. at 454 (finding that costs associated with "travel, mediation fees, photocopying, private investigator to locate missing Class Members, and delivery and mail charges" were routine costs that should be reimbursed).

## VII.    REQUEST FOR SERVICE AWARD

       Plaintiff Kyle Jensen seeks a Service Award under the Settlement of $6,000, and Christopher Beatty seeks $4,000.00 "[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton*, 327 F.3d at 977. Courts routinely award such awards, which are intended to advance public policy by encouraging individuals to come forward and take action to protect the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience.  *Staton*, 327 F.3d at 976-77.  Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to pact as a private attorney general." *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 959 (9th Cir. 2009).

       The Service Awards sought are reasonable and reflects the considerable efforts by Messrs. Jensen and Beatty in gathering information about the case, actively participating in the discovery process, engaging in the settlement process, and acting generally as the

1    "public face" of this litigation.  (Declaration of Kyle Jensen and Christopher Beatty iso
2    Preliminary Approval at ¶¶ 17-19.) (Dkt. Nos. 38-4, 38-5.)

3        Plaintiff Jensen spent many hours participating in this litigation.  (*Id*., at ¶ 19.)
4    Plaintiff Beatty also devote many hours to participating in this litigation.  (Beatty Decl.
5    iso Preliminary Approval, at ¶ 19.)  Messrs. Jensen and Beatty have been integral to the
6    investigation of the claims in this case.  Jensen and Beatty have remained in regular
7    contact with Class Counsel, prepared and sat for depositions, provided updates on current
8    working conditions and encouraging current and former employees of the company to
9    contact Class Counsel regarding this lawsuit.  Unlike other class members, Jensen and
10   Beatty also agreed to full, comprehensive releases of all claims related to the allegations
11   of the operative Complaint, including unknown claims and a waiver of Civil Code section
12   1542. (*Id*., at ¶ 22.) Plaintiffs Jensen and Beatty have taken on a risk of industry-wide
13   retaliation, provided valuable assistance to Class Counsel, and received very little benefit
14   beyond the status as a Class Member.  As such, the proposed Service Award is reasonable.

15       Finally, other courts have found that service awards of $6,000 to named plaintiffs
16   are reasonable. *See Espinoza v. Domino's Pizza, LLC,* 2012 WL 5462550, at *4 (C.D.
17   Cal. Nov. 7, 2012) (10,000 service awards were reasonable); *Ingalls v. Hallmark Retail,*
18   *Inc.,* 2009 WL 10674054, at *1 (C.D. Cal. Oct. 16, 2009) (same); *Ladore*, 2013 WL
19   12246339, *8 (approving service awards of $28,000 and $15,000 for named plaintiffs).

20       Here, the requested Service Awards represent only 0.5% of the total settlement
21   amount of $200,000.00.  Moreover, there have been no objections by Settlement Class
22   Members to the proposed service awards herein. (Kruckenberg Decl., at ¶ 11.) Thus,
23   Plaintiff Jensen and Beatty respectfully requests the Court to grant their request for a
24   Service Awards of $6,000 and $4,000.

25   **VIII. PAGA NOTICE COMPLIANCE**

26       On November 5, 2020, Plaintiffs' counsel submitted a copy of the Stipulation to
27   the LWDA, as required under Labor Code Section 2699(l)(2). Ellison Decl., <u>Exhibit 2</u>.
28   On February 1, 2021, Plaintiffs' counsel submitted a copy of the Order Granting

1    Preliminary Approval of the Stipulation to the LWDA, as required under Labor Code

2    Section 2699(l)(3). Ellison Decl., Exhibit 3.

3    **IX.    CONCLUSION**

4          Plaintiffs submit that that the proposed settlement is fair, reasonable and adequate

5    and requests the Court to enter an order to the effect that:

6          1.    The Settlement is approved in its entirety;

7          2.    The Settlement Class was provided with adequate notice;

8          3.    The Settlement Class was given an adequate opportunity to opt-out;

9          4.    The Settlement Funds be disbursed in accordance with the Settlement;

10         5.    Class Representative Kyle Jensen be awarded a $6,000 and Christopher

11    Beatty be awarded $4,000.00 Service Awards;

12         6.    Strauss & Strauss, APC, be confirmed as Class Counsel;

13         7.    Class Counsel be awarded $70,000.00 in fees, and $8,240 in costs;

14         8.    A Claims Administration Payment of $7,950.00 be paid to the Claims

15    Administrator, Phoenix Class Action Administration Solutions, Inc., from the Maximum

16    Settlement Amount; and

17         9.    Jurisdiction be reserved to ensure compliance with this Settlement.

18    DATED: April 14, 2021                    **STRAUSS & STRAUSS, APC**

19

20                                   By:  /s/ *Andrew C. Ellison*

21                                        Aris E. Karakalos
                                          Attorneys for Plaintiff and the Class
22

23

24

25

26

27

28

24

**UNOPPOSED MOTION FOR FINAL APPROVAL OF STIPULATION OF CLASS ACTION CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND SERVICE AWARD**